Affirmed and Memorandum Opinion filed June 23, 2009








Affirmed and Memorandum Opinion filed June 23, 2009.

 

 

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-07-00647-CR

NO. 14-07-00648-CR

_______________

 

QUINTEN THIBODEAUX, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On Appeal from the 344th District Court

Chambers County, Texas

Trial Court Cause Nos. 13961, 13962

                                                                                                                                               


 

M E M O R A N D U M  O P I N I O N








Quinten
Thibodeaux appeals his convictions for (1) possession, with intent to deliver,
cocaine in an amount of four grams or more, but less than 200 grams, and (2)
possession of methamphetamine in an amount of less than one gram.  In twelve
issues, appellant contends (1) the State committed prosecutorial misconduct by
introducing evidence of an extraneous offense during the guilt-innocence phase
and referencing it during closing argument, (2) the trial court erred by
failing to submit a jury instruction regarding consideration of the extraneous
offense, (3) the trial court submitted an incorrect jury instruction regarding
accomplice-witness testimony, (4) the evidence was legally insufficient to support
both convictions, (5) the evidence was factually insufficient to support the
convictions, and (6) appellant received ineffective assistance of counsel.[1] 
Because all dispositive issues are settled in law, we issue this memorandum
opinion and affirm.  See Tex. R. App. P. 47.4.

I.  Background 

According
to the State=s evidence, on the evening of January 13, 2006, appellant was driving a
rental car on I-10 through Chambers County, Texas while traveling from New
Orleans toward Houston.  Thomas McCann was a passenger in the front seat, and
Whitney Tieken rode in the back seat.  Texas Department of Public Safety
Officers Clayton Cohea and E.J. Salinas were also driving on I-10 and stopped
appellant=s vehicle. 








At
trial, the following circumstances of the stop were provided by testimony of
the officers and a videotape of the stop.  Officer Cohea initially noticed
appellant=s vehicle because it lacked license plates.  He then observed McCann
smoking what appeared to be a marijuana cigarette.  McCann saw the officers and
seemed Astunned.@  As Officer Cohea activated his
lights, McCann threw a marijuana cigarette out the window.  When the vehicle
stopped, Officer Cohea approached the passenger side and spoke to the
occupants.  At that point, he smelled burning marijuana emitting from the vehicle. 
He also saw marijuana residue on McCann and Abundles@ of currency, later determined to be
about $2,000, Asticking@ out of his pocket.  Outside the vehicle, Officer Cohea searched McCann
and found a small baggy containing a gram of cocaine within the roll of money
in his pocket.  Meanwhile, Officer Salinas searched appellant and noticed
marijuana residue on his shirt.     While searching the vehicle, the officers
found methamphetamine and a small baggy of marijuana on top of the console
between the front seats.  Additionally, marijuana residue was scattered
throughout the car.  In the trunk was a microwave box sealed as though it were
new, a sealed microwave in the box, a cereal box inside the microwave, and a
sealed cereal bag inside the cereal box.  When Officer Cohea opened these
packages, he found crack cocaine and powder cocaine in the cereal bag.  The
officers also found other items of contraband in the vehicle.  In total, they
found three plastic bags containing marijuana, one marijuana cigarette,
marijuana residue, two plastic bags with cocaine in a powder form, one plastic
bag with crack cocaine, a plastic bag with methamphetamine, and a few large
bags containing smaller plastic bags, which the officers associated with
breaking down narcotics for sale in smaller quantities.  They also found a
Norenco .45 caliber handgun in Tieken=s bag in the trunk and determined it
had been reported stolen.  Additionally, Officer Cohea determined from the
rental contract that appellant had rented the vehicle, and McCann also
identified appellant as the renter.

The
officers arrested all three occupants.  McCann and Tieken both pleaded guilty
to possession of cocaine and methamphetamine.  Pursuant to their plea
agreements, they received probation and testified as accomplice witnesses at
appellant=s trial as follows. 

Thomas McCann








McCann
gave more testimony incriminating appellant than Tieken provided.  McCann and
appellant met approximately two years before their arrest.  Shortly before the
arrest, appellant knew McCann, who was seventeen years old, was experiencing
financial difficulties because his girlfriend was pregnant.  Appellant
approached McCann about an easy method to make money, which appellant described
as Aa bait and shark kind of thing.@  Appellant indicated McCann=s role was to go Aout there@ in New Orleans and obtain phone
numbers for appellant.  Appellant flew to New Orleans where he rented the
vehicle they later drove toward Houston.  Appellant arranged for two friends to
give McCann a ride to New Orleans.  Appellant paid for their stay in a Anice@ hotel.  McCann Ahung out@ around Bourbon Street, where he
started conversations with persons, obtained their phone numbers, and asked if
they wanted to Ahang out@ later.  On direct examination, McCann generally testified he
was aware a crime was involved because of Ahow it was going on.@  On cross-examination, McCann
clarified he obtained the phone numbers for appellant to sell drugs.  At the
hotel, McCann observed appellant place a bag of drugsCa white powder substanceCin a safe.  Additionally, appellant
prepared three lines of cocaine, and McCann, appellant, and Athe girl@ each snorted a line. They purchased
the microwave and some cereal while they were in New Orleans, but McCann never
saw inside the microwave and did not know it contained cocaine.  Appellant woke
McCann and Tieken, who had spent the night in the hotel room, when it was time
to leave for Houston.  The microwave was already packaged in the box, and their
belongings were ready to be loaded in the car.  Tieken and a hotel employee
walked their belongings to the car.          

McCann
never saw any drugs inside the passenger portion of the car, except one
marijuana joint, which he believed appellant lit and then attempted to snuff
out in the ashtray when they saw the officers.  The ashes flew onto McCann
because someone rolled down the windows upon observing the officers.  Appellant
instructed McCann not to say anything when stopped by the officers.  The money
in McCann=s pocket was given to him to hold by appellant.  At trial, McCann first
denied any cocaine was in the money, claiming the substance was
methamphetamine, but, at the time of his arrest, he did not know it was there. 
Later, he agreed he was possibly confused and it was cocaine.  McCann knew
generally other drugs were in the vehicle but did not know their location.  He
also saw the gun while they were in the hotel room but did not know its source
or place it in the vehicle.   He was to be paid for his role but did not know
the amount and had not been paid when he was arrested.

            Whitney
Tieken








Tieken testified
she lived and worked in New Orleans at the time of her arrest.  She had never
met appellant or McCann but needed a ride to Houston so a friend suggested she
contact them.  Tieken claimed limited involvement with the two men the night
before they left for Houston.  She went to their hotel room briefly to inquire
when they would leave but spent most of the evening on Bourbon Street.  While
in the hotel room, she never used, saw, or heard any discussion about, drugs. 
The next morning, she met the men at the hotel but did not see appellant,
McCann, or anyone else load items into the trunk.            

At one
point during the ride toward Houston, Tieken called her friend, but appellant
told her to hang up and not reveal their location or destination.  Tieken first
testified appellant seemed to be in charge as between the two men but then
testified she did not know if appellant was in charge.  Tieken claimed she
slept during most of the trip.  Except for marijuana which she smelled burning,
she was unaware there were any other drugs, including cocaine and
methamphetamine, in the vehicle. Further, she never saw anyone handle a gun
either at the hotel or in the vehicle.

After a
consolidated trial on both charges against appellant, a jury found him guilty
of the offenses. The jury assessed punishment of 180 days= confinement for the methamphetamine
conviction and seventeen years= confinement for the cocaine conviction. 

II.  Allegation of Prosecutorial Misconduct

In his
first and second issues, appellant contends the State committed prosecutorial
misconduct by introducing evidence of an extraneous offense during the
guilt-innocence phase and referencing it during closing argument. 
Specifically, appellant complains the State elicited testimony from two
witnesses and made a comment during closing argument that the gun found in the
trunk of the vehicle had been stolen from a residence.

First,
Officer Cohea testified as follows:

Q.        . . . Did you locate anything else in your search?

A.        Yes, ma=am.  Also there was a weapon located in the trunk of
the vehicle.

Q.        What type of weapon was that?

A.        It was a Norenco handgun.








Q.        Do you know what caliber?

A.        .45 caliber.  It came back stolen.

Q.        What does that mean, AIt
came back stolen@?

A.        I ran the serial number on
there.  Communications dispatch advised it had been stolen from somebody=s residence.

Subsequently,
the State presented the following testimony from Kenneth Stafford, owner of the
gun:

Q.        . . . I am going to show you what has been marked as State=s Exhibit 15.  I will ask you to take a look at it and
tell me if you recognize that item.

A.        Yes.  It appears to be my pistol.

[APPELLANT=S COUNSEL]:  Objection as to relevance as to this
witness= [sic] testimony at this point.

THE
COURT:      How is this relevant?

[THE
STATE]:    Your Honor, this is a stolen weapon which ties into the crime and
the connection between the defendant and the crime with the drugs.

THE COURT:    Objection overruled.

Stafford then testified
the gun Acame up missing@ from his home over a year before
trial and he reported the theft to the police.

Finally,
in closing argument, the State asserted:

I also brought to you that the gun was a stolen gun
and the fact that the gun was stolen is an indication that this was all a part
of criminal activity.








Appellant
argues the State committed prosecutorial misconduct by eliciting testimony
suggesting appellant stole the gun and raising the same implication during
closing argument because no Rule 404(b) exception allowed admission of this
extraneous offense, it was offered solely to show character conformity, and the
State could not prove appellant committed the theft.  See Tex. R. Evid.
404(b) (stating evidence of other crimes, wrongs, or bad acts committed by the
accused are not admissible to show he acted in conformity therewith and
therefore committed the crime charged, although the evidence may be relevant
for other purposes, such as proof of motive, opportunity, intent, preparation,
plan, knowledge, identity, or absence of mistake or accident). 

However,
appellant failed to preserve error on his contention.  To preserve error for
prosecutorial misconduct, a defendant must (1) make a timely and specific
objection, (2) request an instruction to disregard the matter improperly placed
before the jury, and (3) move for mistrial.  See Penry v. State, 903
S.W.2d 715, 764 (Tex. Crim. App. 1995); see also Tex. R. App. P. 33.1.  
Further, an objection at trial must comport with the complaint on appeal. 
Wilson v. State, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). 

Appellant
did not object to Officer Cohea=s above-cited testimony or the State=s closing argument at issue. 
Appellant objected only at the beginning of Stafford=s testimony but did not object to the
remainder.  The one objection appellant did lodge during trial does not comport
with the complaint on appeal.  Appellant  objected to admission of the
testimony on relevancy grounds, but did not assert below that introduction of
the allegedly irrelevant testimony constituted prosecutorial misconduct
warranting a mistrial.[2]








We
recognize appellant=s prosecutorial-misconduct contention  relative to Stafford=s testimony seems more like a
challenge to admission of evidence.  Therefore, at most, appellant preserved
error only with respect to the first part of Stafford=s testimony because he did not obtain
a running objection, or object outside the jury=s presence, to all of Stafford=s testimony.  See Tex. R.
Evid. 103(a)(1); Martinez v. State, 98 S.W.3d 189, 193 (Tex. Crim. App.
2003).

Nonetheless,
any error in admitting some or all of Stafford=s testimony was harmless.  Improper
admission of evidence is not reversible error if the same evidence is admitted
without objection at another point in the trial.  See Leday v. State,
983 S.W.2d 713, 718 (Tex. Crim. App. 1998); Chapman v. State, 150 S.W.3d
809, 814 (Tex. App.CHouston [14th Dist.] 2004, pet. ref=d).  The fact the gun was stolen was
also admitted through Officer Cohea=s testimony.  Stafford=s testimony merely established the
identity of the gun=s owner.  Appellant=s complaint focuses on admission of
the fact the gun had been stolenCnot the particular person from whom
it was stolen.  Thus, any error in admitting Stafford=s testimony was rendered harmless by
admission, without objection, of Officer Cohea=s testimony.  Accordingly, we
overrule appellant=s first and second issues.

III.  Jury Instruction Regarding Extraneous Offense

In his
third and fourth issues, appellant complains that the trial court erred during
the guilt-innocence phase by failing to submit in the jury charge an
instruction regarding consideration of an extraneous offense.  In particular,
appellant references the evidence purportedly indicating he had stolen the gun
found in the vehicle.  Appellant contends the trial court was required to
instruct the jury that it must limit consideration of evidence of the
extraneous offense to the purpose for which it was admitted and may not
consider this evidence unless it believed beyond a reasonable doubt that
appellant committed the extraneous offense.  Although appellant acknowledges he
failed to request, or object to the absence of, these instructions in the charge,
he suggests the trial court was required to sua sponte submit them. 








The day
after appellant filed his brief, the court of criminal appeals clarified the
law relative to submitting limiting and reasonable-doubt instructions in the jury
charge during the guilt-innocence phase of trial:

[A] limiting instruction concerning the use of
extraneous offense evidence should be requested, and given, in the guilt‑stage
jury charge only if the defendant requested a limiting instruction at the time
the evidence was first admitted.  When the defendant has properly requested a
limiting instruction in the jury charge, the trial court must also include an
instruction on the State=s burden of proof at that time.

Delgado v. State, 235 S.W.3d 244, 251 (Tex. Crim.
App. 2007); see Hammock v. State, 46 S.W.3d 889, 895 (Tex. Crim. App.
2001) (recognizing that once evidence is admitted without limiting instruction,
it may be used for all purposes and trial court is not required to include
limiting instruction in jury charge).  Later in its opinion, the court
reiterated that a trial court generally is not required to instruct the jury
sua sponte on the burden of proof to be used when considering evidence of an
extraneous offense during the guilt-innocence phase.  Delgado, 235
S.W.3d at 254.  The court reasoned that evidentiary issues in the
guilt-innocence phase are not Athe law applicable to the case,@ which the trial court must sua
sponte include in the charge, because determining whether to request
instructions on these matters frequently depends on trial strategy.  Id.
at 249B52; see Tex. Code Crim. Proc.
art. 36.14 (Vernon 2007) (requiring court to submit in guilt-innocence phase
jury charge Adistinctly setting forth the law applicable to the case.@).[3]








In this
case, appellant failed to request a limiting instruction when evidence that the
gun had been stolen was admitted.  Accordingly, appellant was not entitled to a
limiting instruction in the jury charge and the trial court was not required to
include a reasonable-doubt instruction sua sponte.  We overrule appellant=s third and fourth issues.

IV.  Sufficiency of the Evidence

We will
next address, out of order, appellant=s seventh through tenth issues
challenging legal and factual sufficiency of the evidence to support both
convictions because our analysis of these issues is also relevant to some of
his other contentions.  Initially, we note that appellant does not expressly
assert the evidence is insufficient to corroborate the accomplice‑witness
testimony, to which a different standard applies than a general sufficiency
challenge.  See Castillo v. State, 221 S.W.3d 689, 691 (Tex. Crim. App.
2007); Hardy v. State, 246 S.W.3d 290, 297 (Tex. App.CHouston [14th Dist.] 2008, pet. ref=d).  However, in the body of his
argument, appellant briefly suggests the evidence is insufficient to
corroborate the accomplice‑witness testimony.  Accordingly, we will first
address his general-sufficiency contention followed by any challenge to
sufficiency of the evidence to corroborate the accomplice-witness testimony.

A.        General-Sufficiency
Challenge

1.         Standard of Review and
Applicable Law








In
considering a legal-sufficiency challenge, we review all evidence in the light
most favorable to the finding to determine whether any rational trier of fact
could have found the essential elements of the offense beyond a reasonable
doubt.  Salinas v. State, 163 S.W.3d 734, 737 (Tex. Crim. App. 2005).  
We ensure only that the jury reached a rational decision and do not reevaluate
the weight and credibility of the evidence.  Muniz v. State, 851 S.W.2d
238, 246 (Tex. Crim. App. 1993).

In
examining a factual-sufficiency challenge, we view all evidence in a neutral
light and set aside the verdict only if (1) the evidence is so weak that the
verdict seems clearly wrong or manifestly unjust or (2) the verdict is against
the great weight and preponderance of the evidence.  Marshall v. State,
210 S.W.3d 618, 625 (Tex. Crim. App. 2006); Watson v. State, 204 S.W.3d
404, 414B15 (Tex. Crim. App. 2006); Cain v.
State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  While we are permitted
to substitute our judgment for the jury=s when considering credibility and
weight determinations, we may do so only to a very limited degree and must
still afford due deference to the jury=s determinations.  Marshall,
210 S.W.3d at 625.

A person
commits a first-degree felony if he knowingly possesses with intent to deliver
cocaine in the amount of four grams or more but less than 200 grams.  Tex.
Health & Safety Code Ann. '' 481.102(3)(D) (Vernon Supp. 2008); 481.112(a), (d) (Vernon
2003).  A person commits a state-jail felony if he knowingly or intentionally
possesses methamphetamine in the amount of less than one gram.  Id. '' 481.102(6);  481.115(a), (b). 








Appellant
essentially contends the evidence is insufficient to prove his  possession of
the cocaine and methamphetamine. With respect to each alleged offense, the
court=s charge authorized the jury to
convict appellant either as a principal or as a party.  To prove possession of
a controlled substance as a principal actor, the State must prove the defendant
(1) exercised actual care, control, and management over the controlled
substance and (2) was conscious of his connection with the controlled substance
and knew what it was.  See Brown v. State, 911 S.W.2d 744, 747
(Tex. Crim. App. 1995).  The evidence used to prove these elements can be
direct or circumstantial.  Id.  A defendant may be convicted under the
law of parties for an offense committed by the conduct of another if the
defendant, acting with intent to promote or assist commission of the offense,
solicited, encouraged, directed, aided, or attempted to aid the other person in
commission of the offense.  Tex. Penal Code Ann. ' 7.02(a)(2) (Vernon 2003).  Because
the jury returned general verdicts finding appellant guilty of each offense, we
may uphold each verdict if the evidence is sufficient to prove appellant
committed the offense either as a principal or as a party.  See Brooks
v. State, 990 S.W.2d 278, 283 (Tex. Crim. App. 1999); Kitchens v. State,
823 S.W.2d 256, 258 (Tex. Crim. App. 1991).

If the
contraband is not found in the exclusive possession of the defendant, the evidence,
whether direct or circumstantial, must Aaffirmatively link@ the defendant to the contraband in a
manner that is Amore than just fortuitous.@  Poindexter v. State, 153
S.W.3d 402, 405B06 (Tex. Crim. App. 2005).  The following non-exclusive
factors may affirmatively link a defendant and contraband: (1) the defendant=s presence when the search was
conducted; (2) whether the contraband was in plain view; (3) the defendant=s proximity to, and accessibility of,
the narcotic; (4) whether the defendant was under the influence of narcotics
when arrested; (5) whether the defendant possessed narcotics or other
contraband when arrested; (6) whether the defendant made incriminating
statements; (7) whether the defendant attempted to flee; (8) whether the
defendant made furtive gestures; (9) whether there was an odor of narcotics;
(10) whether other contraband or drug paraphernalia was present; (11) whether
the defendant owned, or had the right to possess, the place where the
contraband was found; (12) whether the place where the contraband was found was
enclosed; (13) whether the defendant was found with a large amount of cash;
(14) whether the conduct of the defendant indicated a consciousness of guilt;
and (15) whether a large quantity of contraband was present.  Olivarez v.
State, 171 S.W.3d 283, 291B92 (Tex. App.CHouston [14th Dist.] 2005, no pet.); see Evans v.
State, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006).  The number of
linking factors present is not as important as the Alogical force@ they create to prove the crime was
committed.  Olivarez, 171 S.W.3d at 291.








2.         Analysis

In this
case, the cocaine and methamphetamine were not found on appellant=s person or in an area under his
exclusive control because the vehicle was occupied by three persons. 
Nonetheless, testimony from both accomplice witnesses and other evidence linked
appellant to the cocaine and methamphetamine as a principal actor, as follows:

!                  
McCann=s testimony directly showed appellant conducted a
narcotics-selling business in New Orleans, solicited McCann=s help to further the operation, possessed cocaine
while in New Orleans, and had McCann hold a substantial sum of money which also
contained cocaine;

!                  
McCann and Tieken both denied
specific knowledge of the cocaine and methamphetamine found in the vehicle,
creating a rational inference that appellant, the only other occupant, placed
it there;

!                  
appellant=s ordering Tieken to refrain from using her phone and
instructing McCann to remain silent when stopped by the officers indicated
appellant=s consciousness of guilt and predominant role with
respect to possessing and transporting the narcotics;

!                  
the jury was free to believe
Tieken=s initial testimony that appellant seemed to be in
charge even if she subsequently changed this testimony; the jury could have
rationally inferred she retracted this statement upon realizing that referring
to a person as Ain charge@
implied illegal activity occurred; see Sharp v. State, 707 S.W.2d 611,
614 (Tex. Crim. App. 1986) (recognizing jury is free to believe or disbelieve
some or all of a witness=s testimony); 

!                  
McCann and Tieken both effectively
denied placing the gun in the vehicle, creating a rational inference that
appellant placed it there;  Sergeant Brian Nichols of the Texas Department of
Public Safety narcotics department, who did not participate in the arrest but
testified as a drug interdiction expert, explained that placing a gun near a
large quantity of drugs indicates a person is attempting to protect himself and
his Aload@;

!                  
appellant was the renter and
driver of the vehicle; Officers Cohea and Nichols explained it is common for
traffickers to use rental vehicles to transport narcotics so they do not lose
their own vehicles to seizure if drugs are found by law enforcement officers;  








!                  
Officer Nichols also testified
that being custodian and driver of a vehicle is significant because that person
has care, custody, and control of the contents; and discovering Awho does the car belong to@ plays a major role, and would be his first inquiry,
when determining which person, of multiple occupants, possessed the drugs;

!                  
the cocaine was well-hidden in the
trunk of the vehicle rented and driven by appellant;

!                  
a variety of narcotics were
recovered throughout the vehicle, including the methamphetamine and a small
baggy of marijuana on the console between the front seats; Officers Cohea and
Nichols explained that sometimes a drug trafficker leaves a small amount of
drugs in plain view either for personal use or so he will be arrested for only
a lesser offense when there is actually a larger amount well-concealed
elsewhere in the vehicle; and

!                  
Appellant had
marijuana residue Aall over his front shirt pocket,@ marijuana residue was spread
throughout the car, and it smelled of burning marijuana;  Officer Nichols
testified the presence of marijuana residue on the renter and driver of a
vehicle indicates the person has at least a proclivity to possess controlled
substances.








Appellant
emphasizes McCann and Tieken allegedly lacked credibility for numerous reasons:
McCann denied smoking marijuana and throwing the joint out the window although
Officer Cohea observed both actions; McCann testified appellant gave him the
money found in his pocket when the vehicle was stopped, but McCann told the
officers he received it from the government; at trial, McCann initially denied
possessing the cocaine found in his pocket, contrary to the officers= testimony; McCann believed Tieken
accompanied the men when they purchased the microwave, but she denied doing so;
McCann testified Tieken helped load the car, but she testified she did not do
so; McCann denied awareness of the cocaine in the microwave, but he was the one
who wanted to take the cereal when they left New Orleans and took the microwave
home after his release from jail; both witnesses denied knowledge of the
narcotics, yet pleaded guilty to the offenses; Tieken was briefly alone in the
vehicle while the officers searched appellant and McCann and could have placed
the methamphetamine and marijuana on the console at that time; Tieken 
disavowed knowledge of the gun, but it was found in her bag; and both witnesses
were completely untruthful because they merely testified to comply with their
plea agreements.  At trial, part of appellant=s defense was to show that McCann was
responsible for the narcotics and appellant was merely an unwitting occupant of
the vehicle.

            As appellant
highlights, obviously there were inconsistencies between the
accomplice-witnesses and between McCann and the officers.  However, the jury
may have believed one or both accomplice-witnesses were untruthful regarding
their activities while in New Orleans and their use,  possession, or knowledge
of the various narcotics and gun found in the car to minimize their involvement
while also concluding appellant was responsible for placing the cocaine and
methamphetamine in the car.  The jury also was free to consider the plea
bargains entered into by these witnesses when deciding the weight to be given
their testimony.  We find no reason to intrude on the jury=s role as judge of these witnesses= credibility and the weight to be
given their testimony.      

Appellant
also attacks the significance of the other evidence, besides the
accomplice-witness testimony, linking appellant to the cocaine and
methamphetamine.  Appellant suggests the only such evidence possibly linking
him to the narcotics was his rental of the vehicle, which was alone
insufficient to prove guilt.  Appellant asserts the methamphetamine and
marijuana found on the console were not in Aplain view@ because the officers did not
immediately notice them.  Appellant also suggests marijuana residue was on his
shirt only because it blew there when McCann rolled down the window while
smoking a joint.  

However,
Officer Cohea indicated he did not immediately notice the methamphetamine and
marijuana on the interior console because his initial concern when approaching
the vehicle was to look for weapons.  Officer Salinas also explained that it
took awhile to find these narcotics during his subsequent search because the
car was full of trash.  Therefore, these narcotics were in plain view in terms
of being out in the openCnot concealedCand accessible to appellant.  Moreover, some marijuana was
clearly in plain view because residue was spread throughout the car and at
least one occupant, even if not  appellant, was smoking marijuana.








Appellant
also emphasizes the officers= testimony that McCann, not appellant, possessed a large sum
of money and cocaine on his person when stopped by the officers and exhibited
furtive behavior.  However, Officer Nichols explained that it is a common
tactic for a narcotics dealer to ensure his Amule@ handles the money and drugs so the
dealer is distanced from these items if stopped by law enforcement.  Officer
Nichols also testified some drug traffickers do not act nervous when confronted
by law enforcement because they are Apretty cool characters@ or use substances to calm their
nerves.  Consequently, the jury reasonably could have concluded that appellant
possessed the cocaine and methamphetamine despite the fact that no money or
narcotics, other than marijuana residue, was found on his person and he
exhibited no furtive behavior.

Finally,
appellant cites two cases that are purportedly similar to the present case: Rhyne
v. State, 620 S.W.2d 599  (Tex. Crim. App. 1981); and Roberson v. State,
80 S.W.3d 730 (Tex. App.CHouston [1st Dist.] 2002, pet. ref=d).  However, in these cases, the
defendant=s mere presence in the home or vehicle where narcotics were found was
insufficient to establish possession absent any other links.  See Rhyne,
620 S.W.2d at 600B02; Roberson, 80 S.W.3d at 733B42.  In contrast, significant
evidence in the present case, including the accomplice-witness testimony and
other links outlined above, showed much more than appellant=s mere presence in the vehicle. 

In sum,
based on all the above-cited evidence, the jury could have found beyond a
reasonable doubt that appellant knowingly possessed the cocaine and
methamphetamine.  Further, the evidence is not so weak that the verdict seems
clearly wrong or manifestly unjust, and the verdict is not contrary to the
great weight and preponderance of the evidence.  B. Sufficiency of Evidence
to Corroborate Accomplice-Witness Testimony








AA conviction cannot be had upon the testimony of an
accomplice unless corroborated by other evidence tending to connect the
defendant with the offense committed; and the corroboration is not sufficient
if it merely shows the commission of the offense.@  Tex. Code Crim. Proc. Ann. art.
38.14 (Vernon 2005).  We eliminate all accomplice testimony from consideration
and then examine the remaining portions of the record to determine if there is
any evidence that tends to connect the defendant with commission of the crime. 
Castillo, 221 S.W.3d at 691; Hardy, 246 S.W.3d at 297.  The
corroborating evidence need not directly link the defendant to the crime or be
sufficient by itself to establish guilt beyond a reasonable doubt; there simply
must be other evidence that tends to connect the defendant to the offense.  Castillo,
221 S.W.3d at 691; Hardy, 246 S.W.3d at 297.

In our
analysis above, we outlined the evidence besides the accomplice-witness
testimony linking appellant to the cocaine and methamphetamine, particularly
that he rented and drove the vehicle and the amount and location of the various
narcotics found throughout the car.  We conclude this evidence tended to
connect appellant to possession of the cocaine and methamphetamine and thus was
sufficient to corroborate the accomplice-witness testimony. Accordingly, we
overrule appellant=s seventh through tenth issues.

V.  Jury Instruction Regarding Accomplice Testimony








In his
fifth and sixth issues, appellant argues the trial court erred by submitting an
incorrect jury instruction regarding accomplice testimony.  The trial court
submitted two separate but identical accomplice-testimony instructions
pertaining to McCann and Tieken.  In each paragraph, the trial court instructed
the jury it could not convict appellant on the testimony of the accomplice
unless it believed there was other testimony tending to connect appellant with
the offense   See Tex. Code Crim. Pro. Ann. art. 38.14.[4] 
Appellant contends the trial court erred by failing to also instruct the jury
that the testimony of an accomplice witness cannot be corroborated by the
testimony of another accomplice witness. We agree.  See Taylor v.
State, 7 S.W.3d 732, 736B37 (Tex. App.CHouston [14th Dist.] 1999, pet. ref=d) (holding accomplice-witness
instruction was incorrect because trial court failed to instruct jury that two
accomplice witnesses could not corroborate each other); see also
Chapman v. State, 470 S.W.2d 656, 660 (Tex. Crim. App. 1971) (holding one
accomplice witness cannot corroborate testimony of another accomplice witness).

Because
appellant failed to object, or request any additions, to the instruction, he
must show egregious harm.  See Taylor, 7 S.W.3d at 737 (citing Almanza
v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984)); see also
Herron v. State, 86 S.W.3d 621, 632 (Tex. Crim. App. 2002) (holding
appellant must show egregious harm if he failed to object to lack of any
accomplice-witness instruction).[5]  Under the
egregious-harm standard, the corroborating evidence must be so unconvincing as
to render the State=s overall case for conviction clearly and significantly less
persuasive.  See Taylor, 7 S.W.3d at 737 (citing Saunders v. State,
817 S.W.2d 688, 692 (Tex. Crim. App. 1991), which applied this standard when
determining whether egregious harm resulted from failure to give any
accomplice-witness instruction); see also Herron, 86 S.W.3d at 632
(recognizing non-accomplice evidence can render harmless a failure to submit an
accomplice-witness instruction by fulfilling the purpose the instruction is
designed to serve).     








We 
already have discussed the corroborating evidence linking appellant to
possession of the cocaine and methamphetamine.  Further, it was the police
officers who supplied this evidence and explained its significance to connect
appellant with these narcotics.  Therefore, we conclude the corroborating
evidence was not so unconvincing in fact as to render the State=s overall case for conviction clearly
and significantly less persuasive.  Accordingly, because the error did not rise
to the level of egregious harm, we overrule appellant=s fifth and sixth issues.

VI.  Ineffective-Assistance-of-Counsel Claim

In his
eleventh and twelfth issues, appellant argues he was denied his Sixth Amendment
right to effective assistance of counsel.  To prevail on an
ineffective-assistance claim, an appellant must prove (1) counsel=s representation fell below the
objective standard of reasonableness; and (2) there is a reasonable probability
that, but for counsel=s deficiency, the result of the proceeding would have been
different.  Strickland v. Washington, 466 U.S. 668, 687, 694 (1984); Thompson
v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).  In considering an
ineffective-assistance claim, we indulge a strong presumption that counsel=s actions fell within the wide range
of reasonable professional behavior and were motivated by sound trial
strategy.  Strickland, 466 U.S. at 689; Thompson, 9 S.W.3d at
813; Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).  To
overcome this presumption, a claim of ineffective assistance must be firmly
demonstrated in the record.  Thompson, 9 S.W.3d at 814.  In most cases,
direct appeal is an inadequate vehicle for raising such a claim because the
record is generally undeveloped and cannot adequately reflect the motives
behind trial counsel=s actions.  Rylander v. State, 101 S.W.3d 107, 110B11 (Tex. Crim. App. 2003); Thompson,
9 S.W.3d at 813B14. When the record is silent regarding trial counsel=s strategy, we will not find
deficient performance unless the challenged conduct was Aso outrageous that no competent
attorney would have engaged in it.@  Goodspeed v. State, 187
S.W.3d 390, 392 (Tex. Crim. App. 2005).

Appellant
contends his trial counsel=s performance was deficient in numerous respects as follows.

 

 








A.        Evidence
Regarding Stolen Gun

Appellant
first complains his trial counsel committed the following acts or omissions
relative to evidence the gun found in the vehicle was stolen: (1) failed to
request notice of the State=s intent to use any extraneous bad acts and file a motion in
limine requiring the State to approach the bench before eliciting such
evidence; (2) lodged no objection on hearsay and extraneous-offense grounds
when Officer Cohea testified the gun was stolen; (3) did not request limiting
and reasonable-doubt instructions in the jury charge; (4) failed to object when
the State implied during closing argument that appellant stole the gun; and (5)
mentioned the stolen gun during his own closing argument.  Appellant argues
counsel had no command of the law or facts and allowed appellant to be tried as
a criminal in general.

Even if
appellant had a valid objection to the evidence and argument and was entitled
to the jury instructions, we cannot foreclose the possibility his counsel had a
trial strategy for the above-listed actions or omissions.  See Delgado,
235 S.W.3d at 250B52 (recognizing counsel=s failure to object to lack of
jury-charge instructions regarding extraneous offense can constitute plausible
trial strategy); Johnson v. State, 233 S.W.3d 109, 116 (Tex. App.CHouston [14th Dist.] 2007, no pet.)
(same with respect to failure to object to State=s argument); Heiman v. State,
923 S.W.2d 622, 626 (Tex. App.CHouston [1st Dist.] 1995, no pet.) (same with respect to
failure to object to inadmissible testimony).[6]








 Counsel=s cross-examination of witnesses and
closing argument reflect his defense was twofold: (1) the officers did not
conduct a thorough investigation to determine which party was responsible for
the narcotics and instead charged all occupants simply by virtue of their
presence in the vehicle; and (2) the accomplices, particularly McCann, who
lacked any credibility, were responsible for the narcotics, and appellant was
merely an unwitting passenger.  In line with this second defense, during
closing argument, counsel suggested McCann placed the gun in the vehicle
despite his professed ignorance of the gun.  Counsel argued (1) although McCann
testified he drove to New Orleans while appellant flew, appellant could not
have cleared airport security if he possessed a gun or drugs and (2) McCann
lived in the area where the gun was stolen.  Consequently, considering the
State did not actually connect appellant to theft of the gun, counsel may have
deliberately refrained from seeking to exclude evidence or argument that the
gun was stolen to intimate it was stolen by McCann.     

We
acknowledge it is questionable whether counsel employed this strategy 
considering he did object once when the owner was questioned about the gun. 
However, appellant objected on relevancy grounds and not specifically Rule
404(b); thus, he possibly intended to exclude only evidence regarding the
identity of the owner as irrelevant.  If Acounsel=s reasons for his conduct do not
appear in the record and there is at least the possibility that the conduct
could have been legitimate trial strategy, we will defer to counsel=s decisions and deny relief on an
ineffective assistance claim on direct appeal.@  See Murphy v. State, 112
S.W.3d 592, 601 (Tex. Crim. App. 2003).

B.        Hearsay
Regarding Rental of the Vehicle








Next,
appellant complains of three instances purportedly demonstrating his counsel
failed Ato make every effort@ to exclude on hearsay grounds
evidence appellant had rented the vehicle: (1) counsel did not object to
Officer Cohea=s testimony that he learned the identity of the renter from the rental
contract;[7] (2) counsel
did not object to a portion of  the videotape reflecting that the officer
searching McCann asked who rented the vehicle, and McCann responded, Ahe did,@ obviously referring to appellant;
and (3) subsequently, when cross-examining McCann, counsel confirmed appellant
rented the car in New Orleans. As appellant asserts, the fact appellant had
rented the vehicle was a significant factor linking him to the narcotics found
therein.  Therefore, appellant argues his counsel=s actions assisted the State in
gaining a conviction.[8]             

We again
conclude counsel may have had a strategy for his actions.  He possibly knew
appellant rented the vehicle and any voir dire of the officers or McCann would
reveal they learned this information from appellant.  Thus, counsel may have
decided to instead focus on attacking the significance of appellant=s rental of the vehicle; on
cross-examination, counsel had Officer Cohea confirm there are also Ainnocent@ purposes for renting a vehicle. 
Moreover, counsel possibly emphasized McCann=s claim that appellant flew to New
Orleans and rented the vehicle to argue appellant could not have taken
narcotics and a gun to New Orleans.  Counsel also confirmed on
cross-examination that McCann was too young at the time of his arrest to rent a
car.  Consequently, counsel may have tried to suggest that appellant rented the
vehicle on McCann=s behalf.  In sum, we cannot conclude counsel=s actions relative to evidence
appellant rented the vehicle were so outrageous no competent attorney would
have engaged in them.








C.        Accomplice-Witness
Instruction

Appellant
also contends his counsel was deficient by failing to request a correct charge
instructing the jury that neither accomplice-witness=s testimony could be corroborated by
the testimony of the other accomplice-witness, as we discussed relative to
appellant=s fifth and sixth issues.  Even if counsel was deficient based on this
omission, we conclude appellant was not prejudiced because, as we have
outlined, the State presented ample corroborating evidence.  See Patterson
v. State, 204 S.W.3d 852, 861 (Tex. App.CCorpus Christi 2006, pet. ref=d) (holding trial counsel=s Aglaring error@ in failing to request jury
instruction on accomplice-witness corroboration was not ineffective assistance
when defendant was not prejudiced because State produced ample corroboration
evidence).  Even if we exclude evidence the gun had been stolen and appellant
rented the vehicle, based on appellant=s claim his counsel should have
objected to this evidence, there was still ample corroborating evidence,
considering that appellant was the driver and the amount and location of the
narcotics found throughout the vehicle. 

D.        Voir Dire








Additionally,
appellant contends his trial counsel was ineffective based on his failure to
properly voir dire the jury panel on the presumption of innocence.  At the
outset of voir dire, the trial court explained to the panel that the indictment
was not evidence of guilt and appellant must be afforded the presumption of
innocence.  During his voir dire, appellant=s counsel reiterated the trial court=s earlier remarks.  Counsel then
asked each panel member to consider on a sliding scale whether he or she viewed
appellant as innocent at that point.  Counsel explained: A0@ means appellant is innocent;  A5@ means Awhere there is smoke there is fire@CAthere must have been something there@ for appellant to be on trial; and A10@ means appellant is guilty and the
panel member does not need to hear any evidence.  The panel members who
ultimately sat on the jury replied as follows:  only two answered A0,@ nine provided answers between A3@and A5@; and one answered A10.@  As appellant asserts, his counsel
did not ask any further questions to determine whether the panel members who
answered anything but  A0@ would nonetheless follow the law, challenge any of these
panel members for cause, or exercise peremptory challenges on them. 

We admit
that we are troubled by counsel=s actions.  We have difficulty conceiving of a strategy for
failing to ensure appellant=s jury did not consist of  one person who already believed he
was guilty and nine persons who did not completely afford him the presumption
of innocence.  Nevertheless, based on precedent from our court of criminal
appeals, we are bound to presume counsel may have had some strategy relative to
jury selection.  Specifically, in Delrio v. State, during the defendant=s trial for cocaine possession,
counsel failed to challenge for cause or use a peremptory challenge against a
panel member who stated during voir dire he was a former narcotics officer,
knew the defendant by virtue of this employment, and could not be fair and
impartial, and he actually served on the jury.  840 S.W.2d 443, 444B47 (Tex. Crim. App. 1992).  The court
recognized that a single partial juror will vitiate a conviction; however, the
right to trial by impartial jury is subject to waiver or forfeiture by the
defendant in the interest of overall trial strategy.  Id. at 445B46; see also State v.
Morales, 253 S.W.3d 686, 697 (Tex. Crim. App. 2008) (summarizing Delrio). 
On a cold record, there was insufficient basis to overcome the presumption that
counsel was better positioned than the appellate court to judge the pragmatism
of the case and made all significant decisions in the exercise of reasonable
professional judgment. Delrio, 840 S.W.2d at 446B47; see also Morales,
253 S.W.3d at 696B98 (citing Delrio when holding Morales counsel
was not ineffective for failing to exercise peremptory challenge, after
challenge for cause denied, against panel member who was a district attorney in
office prosecuting defendant although she may have been impliedly biased).   








Likewise,
on this cold record, we cannot foreclose the possibility that appellant=s counsel had some reason for failing
to further question or challenge these particular panel members.  For instance,
counsel may have found them preferable to other panel members, despite their
expressed views.  See  Morales, 253 S.W.3d at 698B99 (recognizing that counsel could
have employed legitimate tactical decision by retaining district-attorney panel
member because he believed she was preferable to at least one other prospective
juror).  Consequently, appellant has not overcome the presumption his counsel
exercised reasonable professional judgment during jury selection.  

E.        AOpening the Door@ to Post-Arrest Silence 

Next, we
consider appellant=s contention his counsel was deficient by Aopening the door@ to appellant=s post-arrest silence in three
instances.

First,
counsel asked Officer Cohea, ATo your knowledge, no statement was ever taken from my
client, was there?,@ to which he replied ANo.@ Appellant acknowledges counsel=s question comported with his
strategy to show the officers did not perform a thorough investigation. 
Reading the question in context, we agree counsel apparently was not
establishing appellant refused to give a statement to protest his innocence,
but trying to show the officers did not bother to obtain a statement before
charging him.  Nevertheless, appellant claims this strategy was Aludicrous@ because demonstrating appellant=s post-arrest silence harmed him. 
However, considering the officers presented significant evidence linking
appellant to the narcotics and corroborating the accomplice-witness testimony,
we cannot conclude counsel=s eliciting the above-cited testimony in an attempt to
discredit the officers rendered his performance ineffective.

Second,
appellant cites a portion of his counsel=s cross-examination of Officer
Nichols.  However, counsel examined only the officer=s general practices with respect to
taking an accused=s statement.  Counsel did not ask, and Officer Nichols did
not testify, whether appellant specifically gave a statement.  Moreover,
counsel=s questioning was apparently
consistent with his strategy of suggesting the officers failed to perform a
thorough investigation because Officer Nichols confirmed it is the officers= role to request a statement.








Finally,
while establishing McCann did not give a statement to the officers at the scene
of his arrest, counsel asked him, ABut in any event, nobody ever asked
you; right?@  McCann responded, ANo. [Appellant] told me not to say anything either way.@  However, the question was clearly
not intended to elicit this gratuitous response.  Although counsel perhaps
should have objected to this comment as non-responsive, this omission is not
appellant=s ineffective-assistance complaint; rather he claims only that counsel
opened the door to this comment.  Further, McCann=s comment did not demonstrate appellant=s post-arrest silence, but only that he instructed
McCann to refrain from speaking to the officers

F.        AOpening the Door@ to Other AExtraneous Bad Acts@

As we
have mentioned, during direct examination, McCann generally testified he knew
illegal activity was involved when he solicited phone numbers in New Orleans. 
It was appellant=s counsel who confirmed on cross-examination that McCann was
obtaining numbers so appellant could sell drugs.  Counsel also elicited McCann=s testimony that appellant provided
the cocaine which the parties used at the hotel and appellant lit a marijuana
cigarette in the car while traveling toward Houston.  Appellant asserts that A[i]t=s like defense counsel was trying to
help the State make their case@ by Aopening the door@ to these other Aextraneous bad acts.@








Once
again, we cannot foreclose the possibility that counsel=s questioning was based on trial
strategy, despite his obtaining testimony that seemed damaging to appellant. 
Counsel may have decided McCann=s testimony on direct examination sufficiently suggested
appellant was responsible for the narcotics such that counsel=s only option was to make McCann=s claim regarding his limited role
and familiarity with the narcotics seem so incredulous the jury would believe
he was solely responsible for these substances.  For example, appellant=s counsel established: McCann claimed
appellant was the narcotics dealer, yet McCann was soliciting customers; McCann
claimed his snorting cocaine in the hotel room was his first experiment with
the substance although cocaine was found on his person when stopped by the
officers; and McCann suggested only appellant was smoking marijuana in the car
when the officers clearly noticed McCann was doing so.   Of course, we do not
know whether counsel utilized this strategy, and if so, it obviously was unsuccessful;
however, on this record, we cannot hold counsel failed to function within
prevailing professional norms.  See Delrio, 840 S.W.2d at 446B47 (refusing to find ineffective
assistance where counsel=s possible adoption of a strategy that was Aundoubtedly risky@ and failed to Apay off@ did not necessarily mean it was
unacceptable).

G.        Opening
Statement 

Appellant=s last claim concerns two aspects of
his counsel=s opening statement which ended as follows:

Richard
Thomas is going to testify today at some point during this trial, the passenger
in this vehicle, and he is going to take responsibility for the drugs in that
cereal box and that my client did not know of those drugs in this cereal box.

As
appellant asserts, (1) counsel misstated Thomas McCann=s name and (2) contrary to counsel=s promise, McCann did not take
responsibility for the drugs in the cereal box or testify appellant had no
knowledge of these drugs.  Appellant primarily contends counsel=s promise of certain testimony when
the jury actually heard the opposite undermined counsel=s credibility and demonstrated he had
no command of the law or facts.  As appellant notes, during its closing
argument, the State  reminded the jury of counsel=s unfulfilled promise that McCann
would take responsibility for the narcotics.  








We
acknowledge it seems unlikely appellant=s counsel was merely mistaken about
the nature of McCann=s anticipated testimony because he had notice the State planned
to call him.  Nevertheless, we conclude there is not a reasonable probability
that, but for the deficiencies during opening statement, the result of the
proceeding would have been different.  The opening statement was very brief
(constituting less than one page of the record), misstatement of the name was
obviously a simple mistake because his full name is AThomas Richard McCann,@ counsel did not belabor the point
about McCann=s predicted testimony, the State=s comment during closing argument was
quite brief, and the jury heard significant evidence regarding appellant=s guilt.

Finally,
as we have discussed, some of our conclusions that counsel=s actions may have been motivated by
sound trial strategy are tenuous.  Accordingly, we emphasize that we examine
the totality of the representation and the particular circumstances of each
case.  Thompson, 9 S.W.3d at 813.  Overall, trial counsel thoroughly
cross-examined the police officers and accomplice-witnesses, attempting to
elicit testimony supporting his twofold defense, and gave a comprehensive
closing argument highlighting this testimony.  Consequently, despite some
questionable actions by counsel, we cannot conclude his overall representation
was ineffective.  Accordingly, we overrule appellant=s eleventh and twelfth issues.

We
affirm the trial court=s judgment.

 

 

/s/        Charles W. Seymore

Justice

 

Panel consists of Justices Yates, Seymore, and Boyce.

Do Not Publish C
Tex. R. App. P. 47.2(b).

 









[1]  Although appellant presents twelve numbered issues,
he essentially raises only six separate complaints because he presents two
issues to raise each complaint for both underlying offenses.





[2]  Citing Stoker v. State, 788 S.W.2d 1, 14
(Tex. Crim. App. 1989), appellant contends he was not necessarily required to
object to the alleged misconduct because the court stated that whether the
defendant objected is only one factor in determining if prosecutorial
misconduct resulted in reversible error.  However, Stoker was decided
before Marin v. StateCthe Awatershed@
decision on preservation of errorC in
which the court held that all but the most fundamental rights may be forfeited
if not insisted upon by the party to whom they belong.  See Marin v. State,
851 S.W.2d 275, 279 (Tex. Crim. App. 1993); see also Saldano v. State,
70 S.W.3d 873, 887B88 (Tex. Crim. App. 2002).   That the State
refrain from introducing evidence violating even constitutional rights is not
such a fundamental right.  See Saldano, 70 S.W.3d at 889.  Moreover, a
defendant=s Aright@ not to be subjected to incurable erroneous jury
argument is forfeited by a failure to insist on its implementation.  Cockrell
v. State, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996).  





[3]  In his reply brief, appellant contends Delgado
is not controlling because the court addressed a jury instruction pertaining to
evidence of an extraneous offense admitted as Asame-transaction contextual evidence,@ which was not involved in the present case.  The Delgado court
indeed emphasized that the extraneous evidence at issue was admitted as Asame-transaction contextual evidence.@  235 S.W.3d at 253B54. 
The court stated that, when evidence is admitted on that basis, Rule 404(b) is
not implicated and the defendant is not entitled to a limiting or
reasonable-doubt instruction.  Id.  However, the court did not limit the
above-quoted holding only to situations in which evidence of an extraneous
offense was admitted as Asame-transaction contextual evidence.@ See id. at 251.  Instead, as the court
later stated,

 

Even if a limiting instruction on the use of an
extraneous offense would have been appropriate here under Rule 404(b), the
trial judge had no duty to include one in the jury charge for the guilt phase
because appellant failed to request one at the time the evidence was offered. 
Because the trial judge had no duty to give any limiting instruction concerning
the use of an extraneous offense in the guilt‑phase jury charge, it
naturally follows that he had no duty to instruct the jury on the burden of
proof concerning an extraneous offense.

 

Id. at 254
(footnote omitted).





[4]  The jury instruction did not exactly track the
language of the statute because it stated the accomplice-witness testimony had
to be corroborated by other Atestimony,@ when the statute actually requires corroboration by
other Aevidence.@  See
Tex. Code Crim. Pro. Ann. art. 38.14.  Regardless, appellant does not raise any
issue regarding this variance.  





[5]  At one point, appellant acknowledges he must show
egregious harm but then suggests he must show only some harm.  We will follow
the precedent of the court of criminal appeals and our court and apply the
egregious-harm standard.  





[6]  The State argues there was no inadmissible evidence
of an extraneous offense because the evidence did not connect appellant to
theft of the gun.  See Lockhart v. State, 847 S.W.2d 568, 573
(Tex. Crim. App. 1992) (recognizing that, to constitute an extraneous offense,
evidence must show crime or bad act and defendant was connected to it); Gosch
v. State, 829 S.W.2d 775, 784 (Tex. Crim. App. 1991) (holding defendant=s trial counsel was not ineffective by failing to
object to admissible evidence).  However, the testimony of McCann and Tieken
circumstantially indicated appellant was the person who possessed the gun. 
Although there was no evidence directly connecting appellant with the theft,
the State apparently offered evidence it was stolen to imply appellant stole
it.  Nevertheless, we need not decide whether testimony the gun was stolen
constituted inadmissible evidence that appellant committed an extraneous
offense because we cannot foreclose the possibility his counsel had a trial
strategy for the above-listed actions or omissions.





[7]  Officer Cohea used his report to refresh his memory
that the rental contract reflected appellant as the renter.  Although appellant
seemed to object on hearsay grounds to the officer=s testifying from the report because it was not in
evidence, he did not specifically object that information on the rental
contract constituted hearsay.





[8]  The State claims the videotape depicting the
officers= stop of the vehicle reflected that appellant admitted
renting the vehicle; therefore, this information was not hearsay and any
objection when it was admitted through Officer Cohea or McCann would have been
futile.  However, we disagree that the videotape reflects any such admission at
the point cited by the State.  One officer asked who rented the vehicle.  The
response is barely comprehensible, but it sounds as though a male voice replied
AI did.@ However, it is
not possible to see or otherwise determine which male made this statement.