Dearl HARDY, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–04–00595–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Jan. 10, 2008.

James F. Keegan, Houston, for appellant.

Michael Adrian Mark, Liberty, for appellee.

Panel consists of Chief Justice HEDGES, Justice ANDERSON, and Senior Chief Justice MURPHY.*

**OPINION ON REMAND**

ADELE HEDGES, Chief Justice.

Appellant, Dearl Hardy, was found guilty by a jury of perjury. The trial court sentenced appellant to six months confinement in the Chambers County jail and assessed a $2,500 fine. On appeal to this Court, we reversed appellant's conviction on the basis that the evidence was legally insufficient to prove that a false statement was made under oath. *Hardy v. Texas*, 187 S.W.3d 678, 684 (Tex.App.-Houston [14th Dist.] 2006), *rev'd*, 213 S.W.3d 916 (Tex.Crim.App.2007). The Court of Criminal Appeals granted appellee's petition for discretionary review, reversed our judgment, and remanded the cause to this Court to address appellant's remaining seven sub-points of error. *Hardy*, 213 S.W.3d at 917. We affirm.

**BACKGROUND**

A jury found appellant guilty of perjury after hearing evidence that appellant directed Deputy John Joslin to file a false DWI (driving while intoxicated) charge against Vernon Coates. On September 3, 2001, Deputy Brett Hulsey observed Coates make two turns without signaling and run a stop sign. Hulsey turned on his lights and siren for Coates to stop, but Coates failed to immediately pull over. When Coates finally stopped, Hulsey smelled an odor of alcohol emanating from Coates. Coates also admitted that he had been drinking. Hulsey later found empty beer cans in Coates' truck. Hulsey arrested Coates for evading arrest, failing to use his turn signal, and disregarding a stop sign. Hulsey did not administer any sobriety tests at the scene and did not arrest Coates for a DWI. Instead, Hulsey deferred to Joslin, who had arrived on the scene with Sergeant David Beck, to determine Coates' intoxication level because Joslin was more qualified to make such determination.

There is conflicting evidence as to whether Coates appeared to be intoxicated when he arrived at the county jail. Jailer Steve Wood saw Coates at booking and testified that Coates was verbally abusive, agitated, and belligerent, but did not appear to be intoxicated. Joslin thought Coates was borderline, but not legally intoxicated. Hulsey testified that while he never thought Coates was legally intoxicated, another deputy could have had probable cause to believe Coates was intoxicated. Hulsey later testified, seemingly in contradiction of himself, that Coates did not appear to have the normal use of his physical and mental faculties and that Coates appeared to be intoxicated. Hulsey stated, however, that he was not qualified to judge Coates' intoxication at the time of his arrest.

At the jail, Hulsey executed a probable cause affidavit on the traffic offenses committed by Coates. Carlton Carrington, a county dispatcher and notary, testified that appellant, who at the time was chief deputy of the Chambers County Sheriff's Department, learned of Coates' arrest and that his attorney was coming to the jail; appellant told the dispatcher "good news travels fast."[1] Appellant then contacted

---

* Senior Chief Justice Paul C. Murphy sitting by assignment.

1. Presumably, appellant's comment stems from Coates' history with the sheriff's department, including a highly publicized and con-

Hulsey at the jail. Hulsey explained to appellant the traffic violations precipitating Coates' arrest. Hulsey also told appellant that he was unsure whether Coates was legally intoxicated and that Joslin was handling the DWI aspect of the traffic stop.

After his initial conversation with Hulsey, appellant called the jail to speak to Joslin. Joslin told appellant that he had performed the HGN (horizontal gaze nystagmus) test at the jail and determined that Coates was borderline, but not legally intoxicated. Joslin did not perform any other sobriety tests and did not give Coates an intoxilyzer test. Joslin also told appellant that Coates had bloodshot eyes, smelled of alcohol, and had stumbled slightly while entering the jail. However, Joslin told appellant that he did not believe Coates was legally intoxicated because Coates had not demonstrated sufficient indicators on the HGN test.

A few minutes later, appellant called the jail again to speak with Joslin on an unrecorded line. According to Joslin, appellant said that he was very knowledgeable about DWIs and wanted Joslin to charge Coates with a DWI "or else." Joslin protested the fairness of Coates' DWI charge, but appellant told him that they needed the DWI in order to suspend Coates' driver's license. Although Joslin did not believe Coates was legally intoxicated, he filed a probable cause affidavit accusing Coates of DWI. Joslin testified that he thought he would be fired if he did not file the DWI charge. Appellant made it clear that anyone who broke the chain of command, in

which appellant was second in line only to the sheriff, and "went above his head," would be fired.

In the probable cause affidavit, Joslin stated that he smelled "a very strong odor of an alcoholic beverage on [Coates'] breath and person." Joslin also wrote a separate report in which he reiterated that Coates smelled of alcohol and stated that he thought Coates "was intoxicated to the point that he was a danger to himself and others from losing the normal use of his mental and physical faculties."[2] At trial, Joslin testified that these statements were lies and that he filed the documents in violation of the law. Joslin told Hulsey, Wood, and Beck that he did not think Coates was legally intoxicated. Hulsey testified that after Joslin spoke with appellant the night of Coates' arrest, Joslin seemed upset, threw his hands in the air, and said "that he had never in his police career ever had to do anything like this before." Hulsey also testified that Joslin later told him that he was directed to file the DWI. Wood testified that when he rode home with Joslin after the Coates' incident, Joslin seemed as if something was bothering him. Joslin told Wood that appellant had ordered him to change his report and that he would lose his job if he did not file the report. Joslin also claimed to have videotaped his encounter with Coates in which he said: "I don't think it is there; I think he is a little short." However, Joslin was unable to locate the videotape.

troversial arrest for the attempted murder of two deputies. Although the jury did not hear specific details about Coates' history with the department, witnesses testified that relations between Coates, his lawyer, and the sheriff's department were unfriendly, and that Coates was treated as a special case the night of his arrest.

2. Joslin claimed to have written an original report on the DWI charge, but neither he nor the district attorney's office was able to locate it. Joslin also testified that he did not write the supplemental report used as evidence at trial and did not know where it came from; he stated, however, that the supplemental report accurately described what happened the night of Coates' arrest.

The day after Coates' arrest, appellant summoned Joslin to his office to discuss Joslin's original report. Joslin testified that his original report indicated he had filed the DWI charge based on his conversation with appellant. Appellant told Joslin to delete any reference to appellant and their second telephone conversation from the report. Notwithstanding appellant's demands, he also told Joslin not to lie in his report and to tell the truth if anyone ever asked about their second telephone conversation. Joslin revised his report and gave both the original and the revised copies to appellant.

In April 2002, Ernest Rodney Yarbrough of the Sheriff's Criminal Investigation Division began an unrelated internal investigation on Beck. Yarbrough believed that appellant had tampered with the Beck investigation. Specifically, Yarbrough had obtained an affidavit in his investigation, but after speaking with appellant, the affiant wanted to change his story. Yarbrough and appellant argued about the investigation, and appellant confiscated Yarbrough's files. In May 2002, the sheriff altered the chain of command so that Yarbrough no longer reported to appellant. Upon learning of this change, Joslin and other deputies met with Yarbrough. Yarbrough then came to believe that appellant had engaged in wrongful conduct and relayed his concerns to the sheriff. Around the same time, in May 2002, Texas Ranger Frank Huff began investigating Joslin for allegations of sexual assault of a female deputy.[3] In the course of this investigation, Joslin admitted to Huff that he had committed a crime in the Coates' incident. Huff's investigation eventually included Hulsey and appellant.

Hulsey and Joslin were charged with felonies stemming from the DWI charge against Coates. However, they were not tried pursuant to agreements with the State to testify against appellant at his trial. The State charged appellant with aggravated perjury and the lesser included offense of perjury. On appellant's motion, the trial court instructed the jury to find appellant not guilty on the aggravated perjury charge and to decide appellant's guilt or innocence on the perjury charge. The jury found appellant guilty of perjury, and the trial court sentenced appellant to six months confinement in county jail and assessed a $2,500 fine.

In appellant's remaining sub-points of error, he argues that the evidence is legally and factually insufficient to uphold his conviction because: (1) there is insufficient evidence proving Joslin made a statement; (2) there is insufficient evidence proving Joslin's declaration was false; (3) there is insufficient evidence proving that appellant told Joslin to lie; (4) the State presented no evidence that appellant did not think Coates committed the offense of DWI; (5) Joslin's accomplice testimony was not corroborated; (6) the evidence that Coates had not committed the offense of DWI rested solely upon the testimony of Joslin; and (7) Hulsey and Joslin had motive to lie.

## ANALYSIS

### Standards of Review

We utilize familiar standards of review for appellant's legal and factual sufficiency challenges. In a legal sufficiency review, we view all of the evidence in the light most favorable to the verdict and determine whether a trier of fact could not have

---

**3.** Joslin maintained that the allegations were for sexual harassment, not sexual assault. Joslin was not prosecuted on these charges

pursuant to his deal with the State to testify at appellant's trial.

found each element of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Young v. State,* 14 S.W.3d 748, 753 (Tex.Crim.App.2000). The jury is the exclusive judge of the credibility of witnesses and of the weight to be given to their testimony. *Jones v. State,* 944 S.W.2d 642, 647 (Tex.Crim.App. 1996). Reconciliation of conflicts in the evidence is within the exclusive province of the jury. *Id.* Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact-finder. *Dewberry v. State,* 4 S.W.3d 735, 740 (Tex.Crim.App.1999). We must resolve any inconsistencies in the testimony in favor of the verdict. *Curry v. State,* 30 S.W.3d 394, 406 (Tex.Crim.App. 2000).

When reviewing the factual sufficiency of the evidence to support a conviction, we review all the evidence in a neutral light, favoring neither party. *Watson v. State,* 204 S.W.3d 404, 414–15 (Tex.Crim.App. 2006); *Drichas v. State,* 175 S.W.3d 795, 799 (Tex.Crim.App.2005). We then ask (1) whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the jury's verdict seems clearly wrong and manifestly unjust, or (2) whether, considering conflicting evidence, the jury's verdict is against the great weight and preponderance of the evidence. *Watson,* 204 S.W.3d at 414–15, 417; *Johnson v. State,* 23 S.W.3d 1, 11 (Tex.Crim.App.2000). An appellate court judge cannot conclude that a conviction is "clearly wrong" or "manifestly unjust" simply because, on the quantum of evidence admitted, he would have voted to acquit had he been on the jury. *Watson,* 204 S.W.3d at 417. Nor can an appellate court declare that a conflict in the evidence justifies a new trial simply because it disagrees with the jury's resolution of that

conflict. *Id.* Additionally, we give due deference to the jury's determinations, particularly those concerning the weight of the evidence and the credibility of witness testimony. *See Johnson,* 23 S.W.3d at 8–9.

Because the jury was charged with the law of parties, the State was required to prove beyond a reasonable doubt that appellant, acting with intent to promote or assist Joslin in committing perjury, solicited, encouraged, directed, aided, or attempted to aid Joslin to commit perjury. *See* Tex. Pen.Code § 7.01(a), 7.02(a)(2) (Vernon 2003). A person commits perjury if, with intent to deceive and with knowledge of the statement's meaning, he makes a false statement under oath. Tex. Pen. Code § 37.02(a)(1).

### Evidence That Joslin Made a False Statement

■ In appellant's first and second sub-points, he argues that there was no evidence showing Joslin made a false statement in his probable cause affidavit. Specifically, appellant argues that Joslin simply identified the charge on which he arrested Coates and made a declaration as to his subjective opinion. Joslin's affidavit begins with the sentence, "The undersigned affiant, a peace officer under the laws of the State of Texas, and being duly sworn, on oath makes the following complaint and statement of fact. This officer had personal knowledge of the following facts and hereby charges that:...." The next section is the criminal complaint and states, "In Chambers County, Texas, [Coates] did then and there unlawfully commit the offense(s) of ... DWI." Joslin also stated the factual background surrounding Coates' arrest. Section 37 of the Texas Penal Code defines a "statement" as any representation of fact. *See* Tex. Penal Code Ann. § 37.01(3). Joslin's statement that he had

personal knowledge that Coates unlawfully committed the offense of DWI is clearly a representation of fact.

Furthermore, "[a] person who willfully swears falsely to a belief in the existence of a fact which he knows does not exist is as guilty of perjury as if he had sworn directly to the existence of a fact which he knew did not exist." *Brasher v. State,* 715 S.W.2d 827, 831 (Tex.App.-Houston [14th Dist.] 1986, no pet.). In other words, a statement of opinion or belief may constitute a false statement when, in fact, the accused holds no such opinion or belief. *See id.* At trial, Joslin testified that he believed the statements indicating Coates had committed the offense of DWI were untrue at the time they were made. Joslin also told Hulsey, Wood, and Beck that he did not believe Coates was legally intoxicated. Appellant failed to controvert the State's evidence showing Joslin did not believe Coates was intoxicated when he filed the probable cause affidavit. Instead, appellant attempted to shift the focus on whether Coates was legally intoxicated the night of his arrest. The issue of Coates' intoxication, however, is irrelevant in determining whether Joslin made a false statement. Because the State's theory was that Joslin misrepresented his belief that Coates was intoxicated, the only relevant issue with respect to Joslin's making a false statement is whether Joslin actually believed Coates was intoxicated at the time he made the sworn statements. We find that the evidence is legally and factually sufficient to support the jury's finding that Joslin made a false statement.

### Evidence that Appellant Told Joslin to Lie

In appellant's third sub-point, he argues that the evidence is insufficient to prove he directed Joslin to commit perjury. Specifically, appellant argues that the evidence shows his mere direction to Joslin to reconsider his original report. Appellant relies on Joslin's testimony, wherein he testified that appellant told him, "Don't lie on your report. If anyone asks you if I talked to you on the phone and stuff, you tell them the truth." Joslin further testified on cross-examination that appellant did not explicitly tell him to falsify an affidavit or to omit from his probable cause affidavit that he did not believe appellant to be intoxicated. According to appellant, this testimony is consistent with his theory that there is a difference between directing another to lie, and directing another to reconsider; according to appellant, he directed Joslin to reconsider.

However, Joslin also testified that appellant told him to file the DWI "or else." Joslin understood the "or else" to mean that he would be fired if he did not change his report and file the DWI against Coates. There was significant testimony that, as second in command, appellant ran the office by intimidation.[4] It was understood that if one crossed appellant, that person would be in danger of losing his job. This evidence of intimidation is consistent with Joslin's understanding that he was required to file the DWI or risk losing his job. Joslin further testified that appellant told him to remove any language in the original report that referred to appellant and their unrecorded telephone conversation. Finally, the State offered a mo-

---

4. Magistrate Tommy Henry testified that he believed appellant tried to intimidate people. When Henry questioned appellant about the differences in Hulsey's and Joslin's probable cause affidavits, appellant became "testy" and told Henry that "we charge them; you read them their rights." Henry interpreted this encounter as appellant's attempt to intimidate him.

tive for appellant's actions with evidence showing that Coates was highly disliked due to a troubled history with the sheriff's office. With this evidence, the jury could have inferred that while appellant did not affirmatively tell Joslin to lie, his "or else" statement impliedly directed Joslin to falsify his report. While the jury could have accepted appellant's theory that he was only directing Joslin to "reconsider," and not lie, they could also have inferred, as apparently they did, that the general statement "do not lie" was dominated by appellant's direct pressure on Joslin to change his report and to file the DWI, coupled with appellant's history of intimidation at the sheriff's office.

It is the exclusive province of the jury to resolve conflicts in the evidence by making determinations of the credibility of the witnesses. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex.Crim.App.2000). The evidence tending to show that appellant directed Joslin to make a false statement is not against the great weight and preponderance of the evidence. We find the evidence legally and factually sufficient to support the jury's finding that appellant directed Joslin to commit perjury.

### Evidence Appellant Did Not Think Coates Committed a DWI

█ In appellant's fourth sub-point, he argues that the evidence is insufficient to show his acting with the intent to promote or assist Joslin in making the false statement. Specifically, appellant contends that since he believed Coates was intoxicated, he did not promote or assist Joslin in making a false statement. However, appellant's personal belief about Coates' intoxication is irrelevant. Even if appellant personally believed Coates was intoxicated, he knew that Joslin did not believe Coates was legally intoxicated based on their first telephone conversation. Therefore, appel-

lant knew, that by directing Joslin to file a probable cause affidavit asserting the belief and representing the fact that Coates was legally intoxicated, he was directing Joslin to lie. The jury could have reasonably inferred that when appellant directed Joslin to file the DWI against Coates, knowing that Joslin did not believe it to be warranted, appellant was acting with the intent to promote Joslin's perjury. Accordingly, we find the evidence legally and factually sufficient to support the finding that appellant acted with the necessary culpability.

### Evidence Corroborating Joslin's Testimony

█ In appellant's fifth and seventh sub-points, he argues that the evidence was legally and factually insufficient to uphold his conviction because Joslin's accomplice testimony was not corroborated. Although appellant raises this issue under his legal and factual insufficiency arguments, a different standard governs whether there is sufficient evidence to corroborate accomplice testimony. Specifically, a conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed. Tex.Code Crim. Proc. Ann. art. 38.14 (Vernon 2005). As the reviewing court, we eliminate all accomplice testimony from consideration and then examine the remaining portions of the record to see if there is any evidence tending to connect the accused with the commission of the crime. *Castillo v. State*, 221 S.W.3d 689, 691 (Tex.Crim.App.2007). The corroborating evidence need not be sufficient by itself to establish guilt; there simply needs to be other evidence tending to connect the defendant to the offense. *Id.*

The record contains evidence, other than Joslin's testimony, tending to connect ap-

pellant with the offense. The State offered evidence from other witnesses establishing that Coates had a history of trouble with the sheriff's office, which suggests a motive for appellant's actions. A number of witnesses testified that appellant ran the sheriff's office by intimidation, and Henry, a magistrate, testified that appellant attempted to intimidate him when asked about Joslin's affidavit. Carrington, the county dispatcher on duty the night of Coates' arrest, testified that appellant asked to speak with Joslin on an unrecorded line. Finally, both Hulsey and Wood corroborated Joslin's testimony that appellant directed Joslin to file the false statement. Hulsey testified that after Joslin got off the phone with appellant, Joslin was upset, threw his hands in the air in frustration, and said "that he had never in his police career ever had to do anything like this before." Hulsey further testified that Joslin told him he was directed to file the DWI. Wood also testified that Joslin seemed worried following his conversation with appellant. According to Wood, Joslin told him that appellant had ordered Joslin to change his report, and that he would lose his job if he failed to do so. Appellant argues that such evidence cannot be considered corroborating because it "came from Joslin"—presumably meaning that because the witnesses heard the statements directly from Joslin, they are improper. We do not find such a limitation in article 38.14. *See* Tex.Code Crim. Proc. art. 38.14.

Appellant further argues that because the evidence proving that Coates was not intoxicated rested solely upon the testimony of Joslin, it is insufficient. The issue of whether Coates was intoxicated is irrelevant to this appeal. Appellant was convicted on a theory that he directed Joslin to file an affidavit swearing that Joslin believed Coates was intoxicated despite Joslin's belief to the contrary. Even if the

jury were to have ultimately found Coates to have been intoxicated, Joslin nonetheless misrepresented his belief about Coates' intoxication under oath pursuant to appellant's direction. Consequently, this sub-point of error is without merit. We overrule appellant's fifth and seventh sub-points of error.

### *Hulsey's and Joslin's Motive to Lie*

In appellant's last sub-point, he argues that the evidence is legally and factually insufficient to uphold his conviction because both Hulsey and Joslin had motive to lie. In support of his argument, appellant relies on *Eckert v. State,* 623 S.W.2d 359, 361 (Tex.Crim.App.1981), *overruled by Reed v. State,* 744 S.W.2d 112 (Tex.Crim. App.1988), for the proposition that accomplice testimony, untrustworthy by nature, should be received and viewed with caution. This proposition is simply the policy justification behind article 38.14 of the Texas Code of Criminal Procedure, which requires that an accomplice witnesses' testimony be corroborated by other evidence. *See Eckert,* 623 S.W.2d at 361; *Walker v. State,* 615 S.W.2d 728, 731–32 (Tex.Crim. App.1981); *Wincott v. State,* 59 S.W.3d 691, 698 (Tex.App.-Austin 2001, pet. ref'd). As discussed above, Joslin's testimony was sufficiently corroborated; therefore, the fact that it is, in a general sense, "untrustworthy" is of no consequence in this case. The other possible relevance to Hulsey's and Joslin's motive to lie is credibility. The law is clear that the fact-finder is the exclusive judge of witness credibility and the weight to be given to their testimony. *Swearingen v. State,* 101 S.W.3d 89, 97 (Tex.Crim.App.2003); *Wesbrook,* 29 S.W.3d at 111. Therefore, we defer to the jury's credibility findings in this case. We overrule appellant's eighth sub-point of error.

After reviewing all the evidence, we find that the evidence is legally and factually sufficient to support appellant's conviction and overrule appellant's sole point of error. We affirm the trial court's judgment.