# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-11-00435-CV

L. J., Appellant

v.

Texas Department of Family and Protective Services, Appellee

FROM THE DISTRICT COURT OF HAYS COUNTY, 274TH JUDICIAL DISTRICT
NO. 2010-1414, HONORABLE JACK H. ROBISON, JUDGE PRESIDING

## MEMORANDUM OPINION

The Texas Department of Family and Protective Services (the "Department") initiated a suit affecting Larry's parental rights to Sarah.[1] The Department also asked the district court to order Larry to submit to genetic testing to determine if he was Sarah's father. After the test was performed, the district court admitted into evidence a genetic report showing that Larry was not Sarah's father and dismissed Larry from the suit. In response, Larry sought to intervene in the suit, but the district court denied Larry's request. Alternatively, Larry asked the district court to sever his dismissal from the underlying suit so that he could appeal the district court's rulings, and the district court granted Larry's motion to sever. In this appeal, Larry challenges various rulings made by the

---

[1] The appellant has asked us to refer to the individuals involved in this case by their initials. Because several of the individuals involved share the same last name, we will instead use pseudonyms for ease of reading.

district court. We will affirm the district court's orders dismissing Larry from the suit and denying his request to intervene.

## BACKGROUND

Leah is the mother of Sarah. Prior to Sarah's birth, Leah was romantically involved with Larry, and Leah told Larry that he was Sarah's father. At the time of Sarah's birth, Larry was in jail. When Sarah was approximately four months old, Larry was released from jail and planned to live with Leah and Sarah as a family. A few days after he was released, Leah told Larry that she was going to work, but Leah did not come back home. In fact, Larry had no contact with Leah for two and a half years.

After Leah left, Larry and Sarah moved in with his mother, and Larry became involved with and ultimately married Barbara. While Larry was living with his mother, Barbara and his mother were involved in an altercation in front of Sarah, and the Department was contacted about the incident. As a result of the conflict, Larry, Barbara, and Sarah all moved in with his grandmother.

While Larry was living with his grandmother, Leah contacted Larry. After talking with Larry, Leah agreed to sign an acknowledgment of paternity stating that Larry was Sarah's father and also agreed to list Larry as Sarah's father on her birth certificate. At some point while they were living in Larry's grandmother's house, Barbara and Larry were involved in a physical fight, and the Department was informed.

After investigating the incident, the Department removed Sarah from Larry's custody. *See* Tex. Fam. Code Ann. § 262.001 (West 2008) (allowing Department to take possession of child). In addition, the Department filed a suit affecting the parent-child relationship alleging that Sarah's

2

health and safety were in danger and that Sarah's continued placement with Larry was inconsistent with her welfare. *See id.* §§ 102.003(5) (West Supp. 2011) (authorizing governmental entity to file suit affecting parent-child relationship), 105.001(a)(1), (h) (West 2008) (allowing courts to issue emergency orders appointing governmental entity as temporary conservator of child). The Department also asked the district court to determine whether Larry was Sarah's father and urged the district court to terminate Larry's parental rights if he was deemed to be Sarah's father. *See id.* § 160.502 (West 2008) (empowering court to require individuals to submit to genetic testing). The affidavit accompanying the Department's petition explained that during the altercation with Barbara, Larry threw her on the bed and placed "his hands around her neck." The affidavit also related other incidents in which Larry allegedly behaved violently towards his grandmother and his history of drug use.

In response to the Department's requests, the district court issued an order naming the Department as temporary sole managing conservator for Sarah. The district court also ordered Larry to undergo genetic testing to determine whether he was Sarah's father. Larry agreed to submit to testing. Around the time that the test was performed, the Department began a reunification process under which Sarah would be placed in the custody of Leah. Essentially, the Department determined that Leah had complied with the requirements that the Department had set out (e.g., attending parenting classes, submitting to psychological evaluation, and maintaining adequate housing).

Once the genetic testing had been performed, the results were admitted into evidence. The results showed that Larry was not Sarah's father. After learning the results of the testing, the Department and Leah both asked the district court to declare that Larry was not Sarah's father. In addition, Leah also asked the district court to remove Larry from Sarah's birth certificate. In response

3

to these requests, the district court scheduled a hearing. During the hearing, Leah also stated that she was seeking to have Larry dismissed from the suit affecting the parent-child relationship because he was not Sarah's father.

After the hearing, the district court issued an order adjudicating that Larry was not the father of Sarah and changing Sarah's birth certificate accordingly. The district court further found that Leah was under duress or that her signature was fraudulently obtained when she signed the acknowledgment of paternity naming Larry as the father. In light of the district court's determination that Larry is not the father, the court also dismissed Larry from the suit.

Subsequent to being dismissed from the suit, Larry filed a motion to intervene. In his motion, Larry asked to be appointed as a possessory conservator for Sarah and, in the alternative, asked the district court to sign an order severing his claims from the case so that he may pursue an appeal. In response to the motion, the district court scheduled another hearing. In this hearing, the Department informed the district court that Sarah was living with Leah and that the Department intended to dismiss the suit, and Larry asked for some type of visitation with Sarah. After conducting the hearing, the district court denied Larry's request to intervene but granted Larry's motion to sever.

Shortly after the district court made its ruling, Larry filed this appeal.

## DISCUSSION

On appeal, Larry raises three issues. Specifically, he contends that the district court made the following three errors: dismissing him from the suit, admitting the genetic report showing that he is not the father of Sarah, and denying his request to intervene. We will address these arguments in the order raised.

4

*Larry's Dismissal*

As mentioned above, in his first issue on appeal, Larry urges that the district court erred by dismissing him from the suit. In making this assertion, Larry contends that he was not provided with proper notice that Leah was seeking to dismiss him from the suit. On the contrary, Larry notes that Leah's motion only stated that she was requesting an order amending Sarah's birth certificate to remove Larry as the father. Further, Larry points out that when the district court sent out a notice explaining that a hearing had been scheduled to address Leah's request, the notice stated that the purpose of the hearing was to address Leah's "Request for Order to Amend Birth Certificate and Request for Increased Unsupervised Visitation." Because he was allegedly not provided notice, Larry contends that when the district court dismissed him from the suit in response to a request by Leah during the hearing, he "was deprived of his due process rights." In addition, Larry contends that he was entitled to due process because Leah signed an acknowledgment of paternity naming him as the father and because "a valid acknowledgment of paternity . . . confers on the acknowledged father all rights and duties of a parent." *See* Tex. Fam. Code Ann. § 160.305(a) (West 2008).

As support for his claims, Larry primarily relies on *Stanley v. Illinois*, 405 U.S. 645 (1972). In that case, the Supreme Court determined that a father "was entitled to a hearing on his fitness as a parent before his children were taken away from him and that, by denying him a hearing . . . , the State denied [the father] the equal protection of the laws guaranteed by the Fourteenth Amendment." *Id.* at 649; *see also In re T.E.T.*, 603 S.W.2d 793, 797-98 (Tex. 1980) (explaining that biological father was given notice of proceedings to terminate his rights and was afforded due

5

process required by *Stanley*). However, unlike the party in *Stanley*, Larry is not the father of Sarah and, therefore, does not possess the same type of "cognizable and substantial" interest. 405 U.S. at 652; *see also id.* at 650 (explaining that procedures that due process may require in particular circumstance depends on nature of private interest that has been affected). Although Leah signed an acknowledgment of paternity, genetic testing demonstrated that Larry was not the father of Sarah before he was dismissed. *See* Tex. Fam. Code Ann. § 160.308(a), (d) (West Supp. 2011) (allowing acknowledgment to be challenged when genetic testing shows that alleged father is not biological father).

Moreover, the issue that was decided in *Stanley* is very different from the issue that Larry raises. In *Stanley*, the Supreme Court was faced with determining what due process required before children are taken from their fathers. 405 U.S. at 648. In this case, on the other hand, we are asked to address the propriety of a defendant being dismissed from a suit. This case was initiated by the Department initially against Larry and Leah. Although Larry correctly points out that Leah was the individual who first suggested that Larry should be dismissed from the suit because the genetic test showed that he was not the father, the Department later joined Leah's request. Specifically, during the hearing, the Department argued that because Larry was not the father, he should no longer be a party to the case.

Provided that a "defendant has not made a claim for affirmative relief," *Cook v. Nacogdoches Anesthesia Group, L.L.P.*, 167 S.W.3d 476, 482 (Tex. App.—Tyler 2005, no pet.), "[a] plaintiff has an absolute, unqualified right to nonsuit its own action against all or any of the defendants," *In re Bridges*, 28 S.W.3d 191, 194-95 (Tex. App.—Fort Worth 2000, orig. proceeding);

6

*see In re Greater Houston Orthopaedic Specialists, Inc.*, 295 S.W.3d 323, 324 (Tex. 2009) (orig. proceeding) (per curiam). A plaintiff may choose to nonsuit a defendant by filing a written motion to dismiss or by making "an oral announcement of the nonsuit in open court," *Cook*, 167 S.W.3d at 482, and the "right to a nonsuit exists from the moment a written motion is filed or an oral motion is made," *In re Greater Houston Orthopaedic Specialists, Inc.*, 295 S.W.3d at 324; *see also Greenberg v. Brookshire*, 640 S.W.2d 870, 872 (Tex. 1982) (per curiam) (expressly disapproving of concept that nonsuit requires anything more than filing of motion or making "oral announcement in open court").

At the time of his dismissal, Larry had not asserted any claims against anyone or made any request for any type of affirmative relief. *See Doe v. Roe*, 600 S.W.2d 378, 379 (Tex. Civ. App.—Eastland 1980, writ ref'd n.r.e.) (stating that party "is one by or against whom a suit is brought while all others who may be . . . affected were 'persons interested' but not parties"). Consequently, the Department had the absolute and unqualified right to dismiss Larry from the suit, including by orally requesting Larry's dismissal during the hearing called to change Sarah's birth certificate. Accordingly, we cannot agree with Larry's suggestion that the district court's dismissal somehow deprived him of his due process rights.[2]

---

[2] In his reply brief, Larry argues that because the hearing in which he was adjudicated as not the father of Sarah was also a permanency hearing, his dismissal was improper. Essentially, Larry insists that nothing in the statutes governing permanency hearings authorizes the type of "dismissal, summary adjudication, or summary determination" that occurred in this case. *See, e.g.*, Tex. Fam. Code Ann. § 263.306 (West Supp. 2011) (setting out procedures for permanency hearings, including provision for determining date of dismissal for suit). Although nothing in the provisions governing permanency hearings expressly discusses dismissing an individual from a suit under these circumstances, we see nothing in those provisions that leads us to believe that a dismissal is prohibited during a hearing held in conjunction with a permanency hearing.

7

For these reasons, we overrule Larry's first issue on appeal.[3]

*Genetic Report*

As mentioned above, in his second issue on appeal, Larry contests the adequacy of the genetic report that the district court admitted into evidence. The family code states that "[a] report of the results of genetic testing must be in a record and signed under penalty of perjury by a designee of the testing laboratory." *See* Tex. Fam. Code Ann. § 160.504(a) (West 2008). The report admitted into evidence provides in pertinent part as follows:

**Conclusion**
Combined Paternity Index:   0 to 1   Probability of Paternity:  0.00% (Prior Probability = 0.5)

---

[3] In his first issue, Larry also asserts that the district court's dismissal was reversible error because dismissal is not an "appropriate means of deciding the merits of a case" and then refers to various published and unpublished cases. *See, e.g.*, *In re C.M.C.*, 192 S.W.3d 866, 869 (Tex. App.—Texarkana 2006, no pet.) (stating that dismissing on basis of standing is not decision on merits); *Beller v. Fry Roofing, Inc.*, No. 04-05-00159-CV, 2005 Tex. App. LEXIS 9790, at *7 (Tex. App.—San Antonio Nov. 23, 2005, no pet.) (mem. op.) (explaining that trial courts may dismiss suit if plaintiff fails to appear but may not adjudicate merits of claim); *Patterson v. Herb Easley Motors, Inc.*, No. 02-04-00351-CV, 2005 Tex. App. LEXIS 6995, at *13 (Tex. App.—Fort Worth Aug. 25, 2005, no pet.) (mem. op.) (concluding that trial court's inclusion of mother hubbard clause in its order dismissing for want of prosecution was error); *Lane v. Baxter Healthcare Corp.*, 905 S.W.2d 39, 41 (Tex. App.—Houston [1st Dist.] 1995, no writ) (setting out that dismissal is not proper method for resolving merits of case but concluding that case law supports use of motion to dismiss when court has no jurisdiction); *Alvarado v. Magic Valley Elec. Co-op, Inc.*, 784 S.W.2d 729, 733 (Tex. App.—San Antonio 1990, writ denied) (stating that trial court erred by including phrase "all other relief is expressly denied" in its order dismissing suit for want of prosecution); *VanZandt v. Holmes*, 689 S.W.2d 259, 261 (Tex. App.—Waco 1985, no writ) (explaining that if plaintiff rests before establishing cause of action, defense should file motion for instructed verdict, not motion to dismiss). However, none of the cited cases involves a situation similar to the one in this case, and none of them stand for the proposition that it is improper to dismiss someone from a suit affecting the parent child relationship after determining that he is not the child's parent.

8

The alleged father is excluded from paternity . . . . These results indicate that [Larry] is not the biological father of the child, [Sarah].

I, the undersigned Director, upon being duly sworn on oath, do depose and state that I read the foregoing report on the analysis of specimens from the above named individuals, signed by myself, and under penalties of perjury it is my belief that the facts and results therein are true and correct.

The report also includes the signature of an employee for the lab that performed the test and was signed and notarized by a notary public.

In challenging the adequacy of the report, Larry contends that statements expressing "belief" are insufficient to invoke the penalty of perjury as required by the family code. In making this assertion, Larry refers to cases that have held that an affidavit was insufficient because it was based on an individual's belief, *see Burke v. Satterfield*, 525 S.W.2d 950, 954-55 (Tex. 1975) (concluding that affidavit stating that attorney "had 'read the accounting and allegations set out thereunder and same are true and correct to the best of his knowledge'" did not "positively and unqualifiedly represent the facts as disclosed in the accounting to be true and within the personal knowledge of the affiant"); *Perez v. State*, No. 03-08-00131-CR, 2009 Tex. App. LEXIS 5457, at *6 (Tex. App.—Austin July 16, 2009, no pet.) (mem. op., not designated for publication) (finding affidavit that asserted that allegations in motion "are true and correct to the best of my knowledge and belief" was insufficient for unsworn inmate declaration because it did not comply with statutory requirement that unsworn declaration be "subscribed by the person making the declaration as true under penalty of perjury"); *State ex rel. Driscoll v. Lindsay*, 877 S.W.2d 856, 857 (Tex. App.—Houston [1st Dist.] 1994, no writ) (concluding that affidavit stating that facts "in the petition were true and correct 'to the best of my knowledge and belief'" was insufficient), and to cases

9

generally stating that affidavits based on belief are insufficient, *see Ex parte Miller*, 604 S.W.2d 324, 326 (Tex. Civ. App.—Dallas 1980, no writ) (concluding that affidavit stating that something was true to best of person's knowledge based on "personal knowledge" was sufficient but explaining that affidavits "sworn to *on best knowledge and belief*" are insufficient); *Schultz*, 551 S.W.2d at 496 (determining that notice swearing that facts were true to best of attorney's knowledge and belief was sufficient but generally stating that affidavits sworn to on belief are insufficient); *Industrial State Bank of Houston v. Wylie*, 493 S.W.2d 293, 295 (Tex. Civ. App.—Beaumont 1973, no writ) (concluding that affidavit containing phrase "true and correct to his best knowledge" was proper but stating that use of "the word 'believe'" has been found objectionable by appellate courts and that affidavits are fatally defective if they contain phrases such as "'on information and belief', 'knowledge and belief', 'verily believes', 'good reason to believe' and 'believes to be true'"). In light of these cases, Larry insists that the report at issue in this case does not comply with the relevant requirements of the family code.[4]

For the reasons that follow, we disagree with Larry. As described earlier, the family code states that genetic reports must be signed under penalty of perjury. *See* Tex. Fam. Code Ann. § 160.504(a). Although Larry correctly points out that cases have held that affidavits stating, without more, that something is true to the best of the affiant's knowledge or belief have been held to be insufficient to subject someone to perjury, *see Burke*, 525 S.W.2d at 954-55; *Perez*, 2009 Tex. App. LEXIS 5457, at *6; *Lindsay*, 877 S.W.2d at 857, the report at issue in this case goes beyond the deficiencies identified in those cases. In the report, the lab employee summarizes the testing

---

[4] We note that Larry raised no other challenge to the admission of the report.

results and states that "under penalties of perjury it is my belief that the facts and results therein are true and correct."

Although the case involved a criminal matter, the court of criminal appeals recently was confronted with determining the adequacy of a statement containing the language "I . . . declare under penalty of perjury that according to my belief the foregoing information [is] true and correct." *Bahm v. State*, 219 S.W.3d 391, 393 (Tex. Crim. App. 2007) ("*Bahm II*"). That case involved an unsworn inmate declaration. *See* Tex. Civ. Prac. & Rem. Code Ann. § 132.001 (West Supp. 2011) (setting out requirements for unsworn inmate declaration). As with the family code provision at issue in this case, the law governing unsworn inmate declarations requires that the person making the declaration subscribe that "the declaration is true under penalty of perjury." *Id.* Initially, the appellate court determined that the declaration was ineffective because it included the phrase "according to my belief," *Bahm v. State*, 184 S.W.3d 792, 800 (Tex. App.—Beaumont 2005), *rev'd*, 219 S.W.3d 391 (Tex. Crim. App. 2007), but the court of criminal appeals reasoned that the inclusion of the phrase "under penalty of perjury" "carries a greater legal significance" than the belief language and should, therefore, be given greater weight, *Bahm II*, 219 S.W.3d at 394. In fact, the court explained that the only language that the governing statutes "actually mandates should be included in such declarations is 'under penalty of perjury'" and that if that phrase is included, "the instrument is sufficiently qualified to be subject to perjury." *Id.*; *cf. Nelson v. Neal*, 787 S.W.2d 343, 347 (Tex. 1990) (explaining that "an affidavit is insufficient unless the allegations therein are direct and unequivocal, and perjury can be assigned upon it"). In other words, the court concluded that "the inclusion of another phrase, 'according to my belief,' which is neither required nor prohibited by the" governing statute should not render the statement ineffective. *Bahm II*, 219 S.W.3d at 394.

11

We believe that the same considerations that drove the court of criminal appeals determination in *Bahm II* apply to this case as well. As with the statute in *Bahm II*, the family code states that genetic reports must be signed under penalty of perjury. *See* Tex. Fam. Code Ann. § 160.504(a). In other words, the phrase "under penalty of perjury" is the only language that the statute mandates should be included in a genetic report, *id.*, and we agree with the court of criminal appeals that the inclusion of that phrase imposes significant legal consequences, *see Bahm II*, 219 S.W.3d at 394. Further, we believe that because the report contained that clause, the legal consequences attaching from its inclusion should not be disregarded simply because the report also says that "it is [the employee's] belief that the facts and results therein are true and correct," particularly since that language is neither prohibited nor required by the family code. *See* Tex. Fam. Code Ann. § 160.504(a).

Moreover, we cannot conclude that the inclusion of the phrase "it is my belief" in these circumstances somehow removes the report from the penalties of perjury. If a person chooses to willfully and falsely swear that he *believes* that a certain fact exists when he knows that it does not, then the individual has committed perjury just as if he had directly sworn that the fact existed even though he knew that it did not. *Hardy v. State*, 246 S.W.3d 290, 296 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd). Stated differently, a statement of belief "may constitute a false statement when, in fact," the declarant "holds no such . . . belief." *Id.*; *see De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009) (explaining that if person "honestly, though mistakenly, thought that his statement was true when he made it," then he has not committed perjury).

The court of criminal appeals undertook a similar analysis in an alternative basis for its conclusion in *Bahm II* that the statement was sufficient even though it contained the phrase

12

"according to my belief." 219 S.W.3d at 394 n.6. Essentially, the court noted that the statute governing the crime of perjury states that a person commits perjury when he makes a false statement "with intent to deceive and with knowledge of the statement's meaning," *see* Tex. Penal Code Ann. § 37.02 (West 2011); *De La Paz*, 279 S.W.3d at 344, and reasoned that the meaning of the phrases "with intent to deceive" and "with knowledge of the statement's meaning" is equivalent to stating "that it was not 'according to [a person's] belief' that the information he was giving was 'true [or] correct,'" *Bahm II*, 219 S.W.3d at 394 n.6. Accordingly, the court concluded that the inclusion of the phrase "'according to my belief' . . . can be viewed as incorporating the language of the perjury statute, and thus reinforcing the application of that statute to the declaration in question." *Id.*

For all these reasons, we overrule Larry's second issue on appeal.

*Request to Intervene*

As mentioned above, after the genetic report showed that Larry was not the father of Sarah, Larry was dismissed from the case, but Larry moved to intervene in the proceeding. The family code authorizes trial courts to grant an individual "leave to intervene in a pending suit" if the court determines that the person has "had substantial past contact with the child." *See* Tex. Fam. Code Ann. § 102.004(b) (West 2008). In his third issue, Larry challenges the district court's decision to not grant his motion to intervene after the district court dismissed him as a party to the case. In particular, Larry insists that the district court abused its discretion by denying his request to intervene "given the undisputed substantial past contact between [Larry] and" Sarah. Moreover, Larry points to the recommendation by the attorney ad litem for Sarah who stated that Larry should be given the opportunity to intervene.

13

We review a trial court's determination regarding an individual's standing to intervene in a suit under the family code for an abuse of discretion. *See Whitworth v. Whitworth*, 222 S.W.3d 616, 621 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *see also In re Lumbermens Mut. Cas. Co.*, 184 S.W.3d 718, 723 (Tex. 2006) (explaining general review of rulings striking intervenors). "A trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to guiding rules or principles." *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011).

The family code provision gives trial courts the discretion to allow someone to intervene in this type of case provided that certain conditions are met. *See* Tex. Fam. Code Ann. § 102.004(b) (stating that court "may grant . . . leave to intervene); *see also* Tex. Gov't Code Ann. § 311.016(5) (West 2005) (explaining that use of word "may" in statute "creates discretionary authority or grants permission or a power"). As pointed out by Larry, to intervene, a person must "have had substantial past contact with the child," but there must also be "proof . . . that appointment of a parent as a sole managing conservator or both parents as joint managing conservators would significantly impair the child's physical health or emotional development." Tex. Fam. Code Ann. § 102.004(b). The burden of providing sufficient proof of these factors falls on the party seeking to establish standing, and "[t]o meet this burden, the nonparent must offer evidence of specific acts or omissions of the parent that demonstrate that an award of custody to the parent would result in physical or emotional harm to the child." *In re C.A.H.*, No. 11-10-00040-CV, 2011 Tex. App. LEXIS 1672, at *6-7 (Tex. App.—Eastland Mar. 3, 2011, no pet.) (mem. op.). In other words, "[t]here must be evidence to support the logical inference that some specific, identifiable behavior or conduct of the parent will probably cause that harm." *Id.* at *7.

14

During the hearing on Larry's motion to intervene, Larry described the relationship that he and his family had with Sarah and how they took care of Sarah for years and also argued that he should be allowed to intervene because no party filed a motion to strike his motion to intervene. However, Larry offered no evidence showing that the appointment of Leah as sole managing conservator would impair Sarah's physical health or emotional development. *See id.* Similarly, the Department also presented no evidence that the appointment of Leah as sole managing conservator would be detrimental to Sarah. To the contrary, during that hearing and in other hearings before the same court, an employee for the Department testified that Sarah had completed all the parental requirements imposed on her by the Department, that Sarah had been placed in Leah's custody, and that the Department intended to reunify Sarah and Leah. Specifically, during one of the initial hearings, Kirstina Herrera testified that Leah has "completed just about everything" that the Department asked her to do, that Leah's random drug tests had "all been negative," that the Department was allowing Leah to have unsupervised visits with Sarah, that those visits were "going fairly well," and that the Department planned to reunify Sarah with Leah. In the hearing regarding the intervention, Herrera related that Sarah was living with Leah and that the Department planned on dismissing the case.

For these reasons, we cannot conclude that the district court abused its discretion by denying Larry leave to intervene in the case under section 102.004(b) of the family code.[5] *See* Tex. Fam. Code Ann. § 102.004(b).

---

[5] In his reply brief, Larry argues that he also had standing to intervene under subsection 102.003(9) of the family code. *See* Tex. Fam. Code Ann. § 102.003(9) (West Supp. 2011). Larry made similar claims in his motion to intervene in which he sought to be appointed as a possessory conservator of Sarah. However, the family code provision upon which Larry relies does not pertain to interventions and instead governs who has standing to initiate a suit affecting a parent-child relationship. In his appeal, Larry only challenges the district court's ruling on his request to intervene in the case.

As an alternative basis for challenging the district court's denial of his intervention, Larry contends that the district court abused its discretion by striking his petition in intervention because no party filed a written motion to strike before the court ruled. Larry's argument is based on rule 60 of the rules of civil procedure, which states that "[a]ny party may intervene by filing a pleading, subject to being stricken by the court for sufficient cause on the motion of any party." *See* Tex. R. Civ. P. 60. Although Leah moved to strike Larry's intervention during the hearing called to address his intervention, Larry insists that her request was ineffective because it was not a written motion to strike filed before the hearing.

However, we are not persuaded that rule 60 has any applicability in this case. The legislature promulgated a separate provision governing interventions in family law cases that explicitly sets out the circumstances under which a non-parent may ask a trial court's permission to intervene in a suit affecting a parent-child relationship. Tex. Fam. Code Ann. § 102.004. Moreover, the legislature empowered trial courts with the discretion to determine whether to allow an intervention even when the statutory requirements are met. *Id.* § 102.004(b). Rule 60, on the other hand, authorizes anyone to intervene in a suit unless a party objects. *Compare* Tex. Fam. Code Ann. § 102.004, *with* Tex. R. Civ. P. 60. Accordingly, we cannot agree with Larry's assertion that rule 60 imposes an obligation on a party opposing an intervention in a suit affecting a parent-child relationship to file a written motion prior to a hearing on the intervention.[6]

---

[6] We note that the case that Larry cited as support for his argument regarding rule 60 did not involve a suit affecting a parent-child relationship. *See, e.g.*, *Guaranty Fed. Sav. Bank v. Horseshoe Oper. Co.*, 793 S.W.2d 652, 657 (Tex. 1990) (determining that trial court abused its discretion by striking plea in intervention in absence of "a motion to strike").

16

For the reasons stated above, we cannot conclude that the district court abused its discretion by denying Larry's motion to intervene, and we overrule his third issue on appeal.

**CONCLUSION**

Having overruled Larry's three issues on appeal, we affirm the district court's orders dismissing him as a party and denying his request to intervene in the case.

_____

David Puryear, Justice

Before Justices Puryear, Henson and Goodwin

Affirmed

Filed:   August 1, 2012

17