**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-25-00114-CR**
_____

**SAMUEL HAYDEN FAULK, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the County Court at Law No. 2
Jefferson County, Texas
Trial Cause No. M323227

**MEMORANDUM OPINION**

Appellant, Samuel Hayden Faulk, was charged by information with driving while intoxicated, second offense, a Class A misdemeanor. *See* Tex. Penal Code Ann. §§ 49.04(a), 49.09(a). He entered a plea of "not guilty" to the charge. The jury found Appellant guilty of driving while intoxicated. Appellant then pleaded "true" to the enhancement paragraph alleging a prior misdemeanor DWI conviction. The trial court assessed punishment at 365 days, probated for two years with 30 days'

1

jail time as a condition of the probation. Faulk filed a notice of appeal. In one issue, Faulk argues that the evidence is insufficient to support the jury's verdict. Faulk argues the evidence is insufficient to establish he was driving while intoxicated because the arresting officer was "a rookie" with no prior experience in DWI investigations, the arresting officer's supervisor, while also present at the scene, had limited interaction with Faulk, the nurse at the hospital only focused on the blood draw, and the toxicologist who testified about the result of the blood test only testified about the blood alcohol level.

For the reasons explained below, we affirm the conviction as reformed.

Summary of the Evidence Presented at Trial

Paul Jeffrey Vickers testified that on the night of May 11, 2019, he was asleep at his home in Nederland, Texas, when the sound of a crash outside caused him to wake up. He went outside to see what happened and found a black vehicle had left the roadway, and it had crashed through his fence and hit a tree in his yard on the side of his house. Vickers's written statement to the police in 2019 was admitted into evidence without objection. In the statement, Vickers notes that there was only one occupant in the vehicle; Vickers reached in the car and put the vehicle in park, and Vickers turned the engine off, and called the police.

Officer Peyton Collins testified that he was an officer with the Nederland Police Department, where he had worked for the past six years. Collins was

2

dispatched to the scene of an accident at approximately 11:45 p.m. on the evening of May 11, 2019, and Collins and his supervising Sergeant, Timothy Smith, responded to the call. They arrived within a couple of minutes of being called, and upon arrival it appeared that the vehicle had left a straight roadway, driven through a privacy fence, struck a table and a tree, and the front of the vehicle was resting up against the tree. Faulk was the only person in the vehicle, and he was sitting in the driver's seat.

Officer Collins spoke to Faulk and noted that Faulk was conscious, but Collins described Faulk as acting "strange, erratic." Collins asked Faulk if he was injured or needed an ambulance and initially Faulk answered, "No." Collins asked Faulk to "put on his shoes" and get out of the vehicle, and Faulk said he could not because "he was hurting," so Collins called for "fire and EMS" as a precaution. Because he did not initially detect the odor of alcohol, Collins decided to treat the situation as a medical emergency. Collins then asked Faulk if he had been drinking alcohol or taking any drugs, and initially Faulk said "No." When EMS arrived, they removed Faulk from the vehicle and assisted him onto a stretcher. Collins asked for consent to search the vehicle, and Faulk gave consent. Faulk told Collins he would find alcoholic drinks from that night in the vehicle. Based on that statement, Collins again asked Faulk whether he had been drinking and then Faulk responded that he had not but was "going to drink" alcohol. Thereafter, when Collins asked again if Faulk had

3

been drinking before the accident, Faulk admitted that he had consumed a "couple more" drinks within four hours before the accident.

Officer Collins observed that Faulk had "[s]lurred speech[,]" exhibited "up and down[]" behavior and appeared disoriented and confused. These signs of intoxication led him to believe that Faulk had lost the normal use of his physical and mental faculties. Although this was Collins's first DWI investigation, his supervisor was on the scene with him. In searching Faulk's vehicle, Collins found two prescription-type pill bottles. One bottle contained five pills, and the other was empty. The empty bottle was labeled "Klonopin[,]" and Collins used his phone to identify the five pills in the bottle and determined that they were "Adderall." Neither bottle had a prescription labeled for Faulk. Because Collins was concerned that Faulk might have hit his head in the crash, he did not conduct any field sobriety tests at that time. Faulk was transported by EMS to the hospital for evaluation. Collins identified the body camera footage taken at the scene, which was admitted into evidence and shown to the jury. After Faulk arrived at the hospital, Collins administered the horizontal gaze nystagmus (HGN) test because it could be performed while Faulk was sitting. Collins testified that he had been trained and certified to administer the HGN test. In performing the test, he observed jerking in Faulk's eye muscles. Collins concluded from the HGN test that Faulk was intoxicated. Collins stated he did not perform other field sobriety tests because they

would have required Faulk to stand, which Collins believed was unsafe until Faulk was medically cleared. Collins identified the camera footage taken at the hospital, which was also admitted and played for the jury.

Once Faulk was medically cleared but still at the hospital, Collins read Faulk the *Miranda* warnings and requested consent to obtain a blood specimen, and Faulk refused. Collins then sought and obtained a blood-draw warrant. The warrant was signed at 1:51 a.m., and a sample of Faulk's blood was taken by the hospital nurse. Collins identified additional camera footage for the jury showing Faulk, which was admitted and played for the jury. The video footage contains several separate statements made by Faulk wherein Faulk states that he had been drinking. Faulk made those statements in response to questions from Collins and in response to questions from the EMS driver.[1]

Sergeant Timothy Smith, a certified peace officer and supervising patrol officer with the Nederland Police Department, with almost ten years of experience, testified that he was dispatched to the scene of the accident. Upon arrival, he observed that the vehicle appeared to have been traveling eastbound when it left the roadway, crashed through a pass-through fence, and then struck a tree in the

---

[1] There are other statements from Faulk on the video footage from the hospital including where Faulk answers the question of the physician about what happened and Faulk responds, "I . . . [was] driving around crazy just drunk . . . not drunk . . . driving . . . I was drinking[,]" and when responding to Collins as to whether he would consent to a blood draw, Faulk stated, "I have drank."

backyard. He observed that Faulk was the sole occupant of the vehicle and was sitting in the driver's seat. When Sergeant Smith first arrived, he was concerned that the situation might be a medical emergency, but he was also concerned about the potential for a driving-while-intoxicated case. At that time, Sergeant Smith had several years of experience, and he had completed "[a] lot[]" of DWI investigations.

Based on his training and experience, and on what he observed at the scene, Smith became suspicious that intoxicated driving was involved. The nature of the crash, Faulk's statements, and Faulk's demeanor contributed to Smith's suspicion. Faulk was transported to the hospital by EMS. After Faulk refused to voluntarily provide a blood sample, Collins left to obtain a warrant, while Sergeant Smith remained with Faulk at the hospital. Sergeant Smith also testified that he prepared the crash report.

Travis Armstrong, a registered nurse who was working at Southeast Texas Medical Center on the early morning of May 12, 2019, also testified. Armstrong explained that pursuant to a blood-draw warrant, Armstrong withdrew Faulk's blood sample at 2:19 a.m. on May 12th. Armstrong identified the blood vials he used, and he explained the procedure he used to obtain the blood from Faulk, which included the use of an iodine solution to prep the arm for the blood draw.

Toxicologist Memling Altamirano testified that she is employed with the Jefferson County Regional Crime Lab, and she is an expert in the field of blood

6

alcohol toxicology. She is licensed by the Texas Forensic Science Commission in blood alcohol toxicology. She identified the "blood kit" used in this case. She testified that she received two vials of blood, vial A and vial B, each with labels corresponding to Faulk's case. She took samples from vial A and used her expertise and equipment in her lab to determine the alcohol content in the blood. She explained to the jury how she analyzes blood, the procedure, and the equipment she uses, as well as the calibration certification she conducted to verify her equipment. She testified that she had prepared a report, and she identified the report she prepared reflecting the results of her testing, and the report was admitted into evidence. According to Altamirano, the testing revealed that the blood sample contained greater than 0.400 grams of ethanol, a blood alcohol concentration exceeding the 0.08 statutory limit. She agreed that normally blood alcohol dissipates over time, and her testing was not performed until May 21, 2019.

The defense called Deborah Faulk, Appellant's mother, as the only witness in the guilt-innocence phase of the trial. Deborah testified that she had just purchased the used vehicle that Faulk was driving that night, and earlier that day she and Faulk had used the car to travel to and from the three properties she owned, and they were working together to clear debris caused by a tornado. She testified that the prescription bottles that were in her car were there because she oversees getting them refilled for her family, and she had to take them to the pharmacy for refills.

7

According to Deborah, her daughter and Faulk, her son, both have prescriptions to take Klonopin, and she and Faulk have prescriptions for Adderall. Deborah explained that she is a registered nurse, and she works at emergency rooms and takes Adderall for ADD and to stay awake during her shifts. Deborah testified she was with Faulk "off and on" during the day of May 11th because they worked at the properties she owns. She testified that she does not allow Faulk to drink in front of her, she did not allow him to have liquor in any of the houses they were in that day, and she does not believe he was drinking because he becomes violent if he has been drinking. Faulk dropped her off between 9:30 p.m. and 10:00 p.m. at her house that night. She last spoke with him around 10:00 p.m., and he told her he was on his way to their rental house to feed the dogs and straighten the house, and afterward he said he might go to HEB. She did not hear from him again that evening, and she did not check on him.

After closing arguments, the case was submitted to the jury and the jury returned a verdict of "We, the jury, find the defendant guilty as charged in the information of driving while intoxicated." The punishment phase of the trial was conducted by the trial judge, and Faulk pleaded "true" to the enhancement paragraph alleging a prior misdemeanor conviction for driving while intoxicated. After hearing additional evidence, receiving a presentence report, and hearing arguments of

8

counsel, the trial court assessed punishment at 365 days, probated for two years with certain terms of probation and time to be served as explained by the trial court.

Law and Analysis

In evaluating legal sufficiency of the evidence to prove the charged offense, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *see also Metcalf v. State*, 597 S.W.3d 847, 855 (Tex. Crim. App. 2020). Under the *Jackson* standard, we defer to the jury's responsibility to fairly resolve conflicting testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *See Hooper*, 214 S.W.3d at 13. The jury as factfinder is the sole judge of the weight of the evidence and witnesses' credibility, and it may believe all, some, or none of the testimony presented by the parties. *Metcalf*, 597 S.W.3d at 855 (citations omitted). We do not reweigh the evidence or determine the credibility of the evidence, nor do we substitute our judgment for that of the factfinder. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). "Each fact need not point directly and independently to a defendant's guilt, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Balderas v. State*, 517 S.W.3d 756, 766 (Tex. Crim. App. 2016) (citation omitted). We treat

9

direct and circumstantial evidence equally and consider "'the combined and cumulative force of all the evidence[]'" viewed in the light most favorable to the jury's verdict. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (quoting *Hooper*, 214 S.W.3d at 16-17). We give deference to the jury's determinations, including determinations involving the credibility and demeanor of the witnesses; we may not substitute our judgment for that of the jury's. *Johnson v. State*, 23 S.W.3d 1, 7, 9 (Tex. Crim. App. 2000); *Hardy v. State*, 246 S.W.3d 290, 295 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd).

A person commits the offense of driving while intoxicated when the person is intoxicated while operating a motor vehicle in a public place. Tex. Penal Code Ann. § 49.04(a). A person is intoxicated when he does not have the normal use of his mental or physical faculties by reason of the introduction of alcohol into the body, or by having an alcohol concentration of 0.08 or more. *Id.* § 49.01(2)(A), (B).

Texas law allows a jury to infer the defendant was intoxicated from circumstantial evidence showing "erratic driving, post-driving behavior such as stumbling, swaying, slurring or mumbling words, inability to perform field sobriety tests or follow directions, bloodshot eyes, [and] any admissions by the defendant concerning what, when, and how much he had been drinking[.]" *Kirsch v. State*, 306 S.W.3d 738, 745 (Tex. Crim. App. 2010). For example, evidence showing "[a] lack of balance and slurred speech can prove intoxication." *Kiffe v. State*, 361 S.W.3d

10

104, 108 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). Additionally, the testimony of a law enforcement officer stating that the officer concluded that the defendant was intoxicated, and describing what he observed, is probative evidence of intoxication. *Henderson v. State*, 29 S.W.3d 616, 622 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) (testimony of officer is probative evidence of intoxication); *see also Annis v. State*, 578 S.W.2d 406, 407 (Tex. Crim. App. 1979) (officer's opinion that defendant was intoxicated was legally sufficient evidence to support DWI conviction based on officer's experience and observed facts, including that the defendant swerved his car across a lane-divider, and other facts indicated he was intoxicated).

Here, the jury could have drawn its own conclusions from observing Faulk's behavior in the videotapes to decide whether he appeared intoxicated. *See generally Vaughn v. State*, 493 S.W.2d 524, 525 (Tex. Crim. App. 1972) ("It is elementary in Texas that one need not be an expert in order to express an opinion upon whether a person he observes is intoxicated."). The testimony from Officer Collins and Sergeant Smith supports the jury's conclusion that Faulk was driving while intoxicated. Additionally, the testimony from the toxicologist and the copy of Faulk's laboratory report showed he had a blood alcohol concentration well over the allowable limit of 0.08. A blood alcohol test result showing that the defendant exceeded the legal limits at the time of the blood draw, considered with other indicia

11

of intoxication at the time of a traffic stop, may logically support an inference that the defendant was driving while intoxicated. *See Kirsch*, 306 S.W.3d at 745.

As the sole judge of the weight and credibility of the evidence, the jury bore the burden of determining what to believe. *See Hooper*, 214 S.W.3d at 13. Based on the record before us, viewing all the evidence in the light most favorable to the jury's verdict, we conclude that a rational jury could have found, beyond a reasonable doubt, that Faulk committed the offense of driving while intoxicated. *See* Tex. Penal Code Ann. § 49.04(a); *see also Jackson*, 443 U.S. at 318-19; *Murray v. State*, 457 S.W.3d 446, 448-49 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

More specifically, a jury could have reasonably concluded, based on the evidence—which included, among other things, the testimony from the witness who heard the crash and who was first on the scene and described that Faulk drove his vehicle off the road, crashed through the witness's fence and into a tree; the testimony of the arresting officer and of the supervising officer, describing Faulk's erratic behavior, slurred speech, and the statements made by Faulk admitting he had at least "a couple" of drinks of alcohol before driving; the testimony explaining that Faulk failed the HGN test; the testimony from the toxicologist and the toxicology report establishing Faulk's blood alcohol was in excess of .40, well in excess of the statutory limit; and the video footage from the scene, and from the hospital showing Faulk's post-accident behavior and statements—that Faulk was driving while

intoxicated. The jury could have reasonably found based on the evidence and reasonable inferences therefrom that Faulk did not have the normal use of his mental or physical faculties by reason of the introduction of alcohol into his body or that he had an alcohol concentration of 0.08 or more. *See* Tex. Penal Code Ann. § 49.01(2)(A), (B).

For the reasons explained above, we overrule Faulk's sole issue.

We note that in the judgment the section entitled "1st Enhancement Paragraph[]" recites "N/A[,]" but the record indicates that Faulk entered a plea of "true" to the enhancement paragraph. This Court has the authority to reform the trial court's judgment to correct nonreversible clerical errors. *See* Tex. R. App. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993). Therefore, we delete the "N/A" in the section entitled "1st Enhancement Paragraph[]" and substitute "True" in its place. Otherwise, we affirm the trial court's judgment of conviction as reformed.

AFFIRMED AS REFORMED.

LEANNE JOHNSON
Justice

Submitted on December 30, 2025
Opinion Delivered February 4, 2026
Do Not Publish

Before Johnson, Wright and Chambers, JJ.

13